438

## No. 29,143.

Grace Torrance Clark, *Appellant*, v. Ethel Vaughan, D. W. Vaughan, Jr., William Boone, and James Stewart, as Register of Deeds of Wyandotte County, *Appellees*.

(292 Pac. 783.)

Opinion filed November 8, 1930.

*William Drennan* and *Joseph A. Lynch,* both of Kansas City, for the appellant.

*H. Earl Meade* and *William H. Towers,* both of Kansas City, for the appellees; *James T. Cochran;* of Kansas City, of counsel.

The opinion of the court was delivered by

HUTCHISON, J.: The appeal in this case is from the judgment of the trial court denying an injunction to the plaintiff who, for herself and on behalf of others similarly situated, sought to enforce the terms of a restrictive covenant entered into by them and the parents of the defendants Vaughan about four years prior to the bringing of this action, in which covenant they agreed not to sell, devise, convey, lease. or sublease any of the real estate described therein and owned by them at any time within fifteen years from the date of the covenant to any person or persons of the African race, blood or descent, commonly called Negroes.

The pleadings and evidence show that the defendants, Ethel Vaughan and D. W. Vaughan, Jr., as the present owners of a residence property consisting of three lots located south of Quindaro boulevard, in Kansas City, Kan., which was included in the covenant, had contracted and agreed to sell the property to William Boone, a colored person, in violation of the terms of the written agreement, and Boone has taken possession of the property and was residing thereon when the action was commenced. The court, after hearing the evidence, made findings of fact and conclusions of law, the latter being as follows:

"1. The restrictive agreement hereto attached, marked "Exhibit A," was a legal and binding restriction upon the alienation of the property of the signers.

"2. Owing to the change in the conditions since the signing of said agreement, it would be inequitable to enforce the same by an injunction as to the defendants, D. W. Vaughan, Jr., and Ethel Vaughan, and for that reason the temporary injunction is dissolved and a permanent injunction denied, and the plaintiff is relegated to her remedy at law for breach of contract; the costs to be divided equally between the parties plaintiff and defendant."

There is no error assigned as to the first conclusion that such a covenant may be valid and binding, and there is no question in the case about infringement upon any of the constitutional rights of any citizen by entering into such an agreement; neither is there involved in the case any of the questions of race prejudice or feeling, but the rights of the parties. to the covenant, both plaintiff and defendants, are based upon the cold business proposition of the lack

of demand for property and the depreciation in the value thereof when the adjoining or neighboring property is owned and occupied by Negroes, on which question the evidence did not materially disagree, except as to extent of depreciation.

The appellant insists that the second conclusion is absolutely inconsistent with the first, and should not as a matter of law be permitted to stand; that if the covenant is valid and binding, she is entitled to injunctive relief for the violation or breach thereof, and cites among other decisions: *Godfrey v. Black,* 39 Kan. 193, 17 Pac. 849; *Webster v. Cooke,* 23 Kan. 637; *Mendenhall v. School District,* 76 Kan. 173, 90 Pac. 773; *Gano v. Cunningham,* 88 Kan. 300, 128 Pac. 372. They all show the right of the plaintiff to injunctive relief notwithstanding they also may have had remedies at law; the first case being for a breach as to the use of a part of a hotel property for a different purpose under a long-term lease, and it was held that the remedy at law might not be adequate and the rights claimed by the lessor under the terms of the lease were equitable. In the other cases there were continuing trespasses necessitating a multiplicity of suits at law on account of each recurring trespass, and it was held that the claim of the plaintiff was equitable and entitled him to relief by injunction.

The trial court evidently adhered fully to the principles maintained in these cases when the injunction proceeding was recognized as being a proper and appropriate remedy in the case and in proceeding to hear the evidence on that theory. But after hearing all the evidence the court decided that it would be inequitable to grant the injunction. This is not a denial of the right to use the injunction as a remedy in such cases, but a holding that the equitable rights of the plaintiff were not such, under all the facts and circumstances, as to justify the granting of an injunction. Appellant asserts she has no other remedy, adequate or otherwise. This situation, under the uniform rule, entitles plaintiff to the remedy, but not necessarily to a favorable judgment under that remedy, unless the facts and circumstances show an equitable right in the plaintiff that is not inequitable as to the defendants. The second conclusion has to do not with the remedy, but with the equitable rights of the parties as evinced by the facts and circumstances of the case.

"The jurisdiction of equity to enforce covenants restricting the use of property is not absolute, and where such covenants were made with reference to the continuance of existing general conditions of the property and its sur-

roundings and there was such a change in the character of the neighborhood as to defeat the purpose of the restrictions and to render their enforcement inequitable and burdensome, a court of equity will not enforce these restrictions but will leave complainant to his remedy at law." (32 C. J. 212.)

"Though ordinarily equity may be invoked to enforce negative covenants and clauses in deed restricting use of property, whether injunction will be granted is matter within sound legal discretion of chancellor, to be determined in light of all facts and circumstances.

"In suit to enjoin violation of restrictive covenants, each case must be considered in light of its own particular facts." (*Ludgate v. Somerville,* 121 Ore. 643, 644.)

Appellant urges that there was no substantial change in the encroachment of the colored population upon the property included in the restrictive covenant since its execution and none to justify the court in denying the plaintiff injunctive relief, and further that there was no evidence to sustain finding No. 14, which is as follows:

"That the occupancy of any of the restricted property in McGrew Grove by people of the colored race would reduce the market value of said property from 35 to 50 per cent. That the occupancy of lots 1, 2 and 3, in block 2, Hafner's Grove, by people of the colored race as estimated by real-estate men would reduce the market value of property in McGrew Grove from nothing to 30 per cent. The court finds that said reduction by reason of occupancy by Negroes would be very little, if any."

Appellant complains particularly of the last sentence of the finding. All of the property included in the covenant was located in practically a solid body in McGrew Grove, except lots 1, 2 and 3, block 2, Hafner's Grove, belonging to the defendants Vaughan, and another residence property belonging to one Westfall in Hafner's Grove, immediately west of that of defendants, except that they were separated by an alley. These two residential properties belonging to the defendants and Westfall were separated from the property of all the other signers of the covenant by Quindaro boulevard, and they front on the boulevard on the south side thereof and lie opposite the main body of lots in McGrew Grove. The signers of the covenant were the owners of all the property in McGrew Grove except the lots east of the alley and facing on Fifth street, and four residence lots, two on the north side and two on the west side of the grove. A private driveway was maintained from the boulevard north, affording frontage to many of the lots in the grove, and the other lots in McGrew Grove fronted on the boulevard on the south or on Greeley avenue on the north.

The court found that at the time the covenant was executed all

the property south of that of defendants and Westfall in Hafner's Grove was occupied by Negroes, and part of the lots east of the alley and facing on Fifth street in McGrew Grove were occupied by Negroes, and further found that since the signing of the covenant all the property in Hafner's Grove facing on Quindaro boulevard except that of the defendants and Westfall, both east and west of them, has been occupied by Negroes; also, that one of the two lots on the west side in McGrew Grove and the rest of the lots east of the alley and fronting on Fifth street have been occupied by Negroes; and it was further found by the court that the property directly east of that of the defendants and facing on the boulevard has a large building thereon and is being used as an institutional church for colored people and has in connection therewith a laundry for colored people and rooms for needy colored women and children, furnishing employment for fifteen or twenty employees and inmates. The findings further state that two churches on Fifth street formerly used by Caucasians have been sold to and are now used by Negroes, and since the signing of the agreement the attendance at the Longfellow public school north of McGrew Grove, a school for whites, has been rapidly decreasing and the number of the teachers has been reduced because of Caucasians moving out of the neighborhood and Negroes moving in.

These were the changes found to have taken place since the execution of the contract in June, 1924, by defendants and others and the changes considered by the real-estate dealers in giving their opinions as to the present value of the property of plaintiff and others in McGrew Grove and the property of the defendants, and the difference in value, if any, by reason of these changes.

Appellant concedes that the evidence shows that the occupancy of any of the restricted property in McGrew Grove by people of the colored race would reduce its market value from 35 to 50 per cent. The abstract does not show much testimony as to the effect on the value of the property in McGrew Grove by the occupancy by Negroes of the property south of the boulevard. One witness said it would reduce the value almost as much as such occupancy would in the grove itself. Another said from 25 to 35 per cent. Another said the restriction on the property on the south side of the boulevard afforded a good protection to the property in McGrew Grove, but the property in McGrew Grove did not in any way protect the property on the south side of the boulevard. Still another witness

testified that he tried to sell the Vaughan property to white people, but could not interest anyone in it; neither did he believe the property in McGrew Grove could be sold to other white people for anywhere near its value; that the only way to sell any of it would be to sell it to Negroes, as they were the only buyers for property in that immediate vicinity, and for that reason he concluded there would be no further depreciation of the property in McGrew Grove because of the occupancy of the Vaughan property by Negroes. There is nothing to show that the court wholly disregarded the testimony of the last witness, but on the contrary the findings state that the occupancy of the Vaughan lots by colored people, as estimated by real-estate men, would reduce the market value of the property in McGrew Grove from nothing to 30 per cent. This was but the statement of the estimates of real-estate dealers and included the extremes of such estimates, and this statement of the court was followed by the finding that such reduction "would be very little, if any."

Appellant cites the case of *Ludgate v. Somerville,* supra, where a restrictive covenant was enforced when rapid changes had been made by way of encroachments of business upon the residential district, the court holding that although the defendants' property may be more suitable and valuable for business purposes than for residence, and that the restriction is no longer beneficial, that fact should not deprive the plaintiff of her rights under the contract, and although her property may be more valuable for business than for residence yet the fact that it is her home must be taken into consideration.

It is forcibly stated in 32 C. J. 208 that the amount of damage that the plaintiff may sustain by the breach of such covenant is immaterial and many of the authorities cited by appellant turn on that point. (*Todd v. North Ave. Holding Corporation,* 201 N. Y. Supp. 31; *Bohm v. Silberstein,* 220 Mich. 278; *Brown v. Huber et al.,* 80 Ohio 183.) Generally speaking, a defendant will not be relieved from his obligation under such a contract on the ground that it will not affect the plaintiff much, if any, financially. The plaintiff is entitled to his rights under the contract regardless of the extent of his injury if the enforcement of the contract will not be burdensome and inequitable to the defendant.

"The contract, the violation of which is to be restrained, must be so far equal and just in its terms and circumstances as to be enforceable in equity

and good conscience; and it must not operate harshly or be inequitable." (32 C. J. 190.)

The court found in this case that many real-estate agents for several months had tried in vain to rent or sell the Vaughan property to white people and that it could not be rented at all nor sold to white people for to exceed 40 or 50 per cent as much as it could to Negroes. Is the contract just and equitable as to these particular defendants when it practically confiscates their property and when it serves as a protection to the property of the plaintiff in the solid district north of the boulevard, while, as one of the witnesses stated, it in return was not protected by the property on the north? This distinction is well made in the recent case of *Sanford v. Keer*, 80 N. J. Eq. 240, where it was said:

"Where, by reason of a change of the character of a neighborhood the enforcement of a restricted covenant would be a burden upon the restricted property without conferring any benefit upon the property of the covenantee, equity will refuse relief, but where the change does not conflict with the essential purpose of the covenant and the benefit therefrom remains unimpaired, a violation will be enjoined." (Syl. ¶ 5.)

Likewise it was recently said in the case of *Cuneo v. Chicago Title & Trust Co.*, 337 Ill. 589, that equity will not enforce a building restriction where to enjoin violation of the restriction will be a great hardship on the owner and of no benefit to the complainant.

"Equity will not, as a rule, enforce a restriction upon the use of property by injunction where the property has so changed in character and environment as to make it unfit or unprofitable for use should the restriction be enforced." (*Dolan v. Brown*, 338 Ill. 412, syl. ¶ 3. See, also, *Batchelor v. Hinkle*, 210 N. Y. 243; *Koehler v. Rowland*, 275 Mo. 573; *Moore v. Curry*, 176 Mich. 456.)

None of the parties in this case, either plaintiff or defendants, were responsible in any way for the change that has taken place since the execution of the covenant, and while some of the changes noted do not directly affect the property of the defendants except to show the general encroachment, yet the changes in the immediate vicinity of defendants' property were such as to wholly prevent the leasing of their residence and to reduce the selling price of their property to an unreasonable extent. These facts and the further apparent situation as to the unequal reciprocal protection, would make the enforcement of the covenant under the changed conditions very burdensome and inequitable to these defendants. We find no error in the conclusion reached by the trial court.

The judgment is affirmed.

JOCHEMS, J. (dissenting): The trial court held the restrictive agreement was legal and binding. It should have enforced it by injunction. It is of no avail to plaintiff to relegate her to her remedy at law for breach of contract. This remedy at law is merely fanciful—one in theory—but impossible of any practicable application. This is easily demonstrable by asking the question: "What is the measure of damages which shall be allowed to plaintiff for breach of the contract?" It is apparent that plaintiff does sustain a damage by defendants' breach of this contract. But how much? How is it to be demonstrated to a jury in dollars and cents? How is the court to instruct a jury in such a case as to the measure of the plaintiff's recovery?

Most of our cities were platted in the early history of our state without restrictions of any kind. Like Topsy, they "just grew up." This condition in recent years has been the source of much regret and disappointment. People have built many fine homes in our cities and have discovered too late that they have no way to protect themselves against the erection of a filling station, garage or store building next door. This situation afforded a fertile field for the "city planners" who recommended the adoption of zoning ordinances. These ordinances "zone" the city so as to set aside certain portions for strictly residential use, apartments or commercial property, as the case may be. While there was strong protest against zoning ordinances in the beginning, the principal objection after they are once adopted is the frequent changes which are permitted therein by the governing bodies of the cities. People object to a change in the zone where they have bought property relying on the use prescribed by the ordinance at the time of purchase.

Titles to real estate must be certain. The right of people to impose the burdens of restrictive covenants on real estate must be recognized and enforced unless such covenants be for some reason illegal. When a person buys a tract of real estate on which restrictive covenants are imposed he should know that he is bound by such covenants; that they mean just what they say so far as the property affected thereby is concerned.

Where, in the development of a city, people see fit to enter into a restrictive agreement such as the one in the case at bar, or plat an addition with restrictive covenants in the plat, or convey by deeds containing such restrictions, the courts should enforce such restrictions by injunction unless they be illegal. In the case at bar the

people who entered into the contract knew when they did so that the making of that contract could not and would not prevent colored people from acquiring all the property around them right up to the boundary of the properties involved in the contract. Nothing these people could do could prevent that. The fact that colored people were moving in the direction of the property must have been the moving cause of the contract. What these people who entered into the contract had in mind was not to prevent colored people from surrounding them, but to prevent the restricted property from being used or occupied by people of that race. They wanted to restrict their property accordingly. It was their property. They had a right to make the contract. They entered into it understandingly, and now, because a change in conditions has come about which they were powerless to prevent, can it be said that defendants should be relieved from their contract?

I think the trial court was in error in holding that the reduction in value of plaintiff's property by reason of the sale of defendants' property to Negroes would be "little, if any." It is true it could not be determined in dollars and cents. The damage is difficult, almost impossible, of ascertainment, but it is there nevertheless. Defendants' property, although lying across the street from the remainder of the property involved in the contract, served as a buffer for plaintiff's property. It kept Negroes just that much farther away from plaintiff's property. It may well be argued that the contract was of greater advantage to plaintiff than to defendants, but if defendants made an improvident contract that is no reason why they should be relieved from it.

It must be borne in mind that the changes upon which defendants rely for relief from the contract are not such as occurred in the use of the property embraced in the contract. They are changes occurring on property outside the contract over which the parties had no control.

Under the circumstances of this case, I believe the better rule to follow is that laid down in the case of *Ludgate v. Somerville,* 121 Ore. 643, 256 Pac. 1043. After pointing out changes which had occurred on properties situated near a highly restricted residential addition, the court said:

"It may be that defendant's lot is more suitable and valuable for business purposes than for a residence, but, at the time he purchased it, in 1922, he was unquestionably aware of the condition of which he now complains. The

opinion of defendant and other lot owners in this district that the restriction is
no longer beneficial does not deprive the plaintiff of her right to rely thereon.
We are not prepared to say, in view of the evidence, that the maintenance
of this part of Laurelhurst as a residential district is of no substantial benefit
to plaintiff. It is true that it might be more valuable for business purposes,
but there are some things in this strenuous age of commercialism that count
more than cash. It is her home." (p. 652.)

See, also, *Bohm v. Silberstein,* 220 Mich. 278, 189 N. W. 899;
*Brown v. Huber,* 80 Ohio St. 183.

The property owner should be secure in his title. If he has pur-
chased on the faith of a valid restriction which furnished the prime
inducement causing him to make his investment, he should be pro-
tected in the enjoyment of the restriction. Examiners of titles
should be able to advise prospective purchasers not only that the
title is subject to the restrictions appearing in the conveyances, but
should also be able to advise that the covenants are to be inter-
preted in strict accordance with the meaning and intent of the
language used.

In the development of the modern city restrictive covenants are
becoming a matter of great moment. Their enforcement becomes
important to progressive town building. Courts should not hesitate
to extend the strong arm of equity to safeguard and enforce valid
covenants where the parties entitled to the benefit thereof have not
waived them or permitted their breach under such circumstances
as to create an estoppel.

The judgment of the trial court should be reversed and directions
given to allow the injunction sought by plaintiff.