No. 33,507

HOWARD F. WELSH, MRS. CLAIRE FELTON and W. H. GREEN, *Appellees,* v. BLANCHE I. FLO and ESTHER E. FLO, *Appellants.*

(78 P. 2d 1084)

Opinion

filed December 11, 1937.

*John L. Kirkpatrick, C. W. Gorsuch,* both of Olathe, *G. W. Stubbs, R. S. McKenzie* and *Tom J. Stubbs,* all of Kansas City, Mo., for the appellants.

*Frank D. Hedrick,* of Olathe, for the appellees.

The opinion of the court was delivered by

HUTCHISON, J.: This appeal is from an order of the district court of Johnson county enjoining and restraining the defendants from using, or permitting to be used by others, any building on the south half of lot 41 of Goodland Heights in that county as a residence which has been or shall hereafter be built at a cost of less than $2,500, and enjoining the defendants from engaging in any major business enterprise on the premises, including the chicken business, held to be in violation of the limitations and restrictions contained in the deed to the defendants, and the plat.

The action was brought by three residents of adjacent lots in the same platted territory, called Goodland Heights. The same limitation and restriction applied to the entire plat, which consisted of 64 lots or a division of 155 acres. The three restrictions here under consideration are as follows:

"(1) Such property shall be used for residence, gardening and other agricultural purposes only.

"(2) No residence costing less than twenty-five hundred ($2,500) dollars shall be built on any lot in this addition or on any subdivision thereof.

"(4) All outbuildings shall be constructed of good quality of recognized building material, and completely finished, of quality and character that will not be injurious to, or hinder the sale of, any other tract or portion of said property, and shall not be constructed or permitted to be located within fifty feet of the line of any public highway."

The defendants are sisters, and the deed was made to both of them, but the second-named defendant had conveyed her interest therein to the first-named defendant before this action was commenced. The lot contains 1.37 acres. It is 372 feet long, east and west, and 143 feet wide, north and south, facing Lowell road on the east. The first-named defendant employed an architectural engineer to plan and supervise the erection of a poultry house on this lot, which house is to be 150 feet west from the front of the

lot or road, and when completed it will cost $4,500. It is to be 62 feet long, north and south, and 32 feet wide, east and west, with a one-story office building to the south of the poultry house, 18 feet by 24 feet, making a total length of 95 feet, including the space between the poultry house and the office.

The court found that at the time of the commencement of this action the defendants had already completed the construction of the office building and it was being occupied by the defendant, Esther E. Flo, and her mother, and that they are still occupying the building as their residence, and that it cost approximately $1,200. The court further found that the defendants had commenced the erection of the poultry house by digging foundation-wall trenches and placing upon the premises quantities of cement, sand, crushed rock and cement-cinder blocks for foundation, that the poultry house would have a capacity for housing 1,236 hens. The court further found that the plans of the architect, not completed, however, included a residence in front to cost approximately $3,500, and to the rear four other henhouse units, 62 by 32 feet each, with the same capacity as the one for which the plans were complete and foundation commenced.

The evidence shows that the office building already constructed had in it the operator's bedroom and bathroom and a very small kitchen, and the mother and sister of the first-named defendant were occupying and using the same.

The defendants maintain that the building, when completed, including the office portion, will be one complete structure costing $4,500, and that it will be constructed along the line of the requirements contained in restriction No. 4, above quoted, and may be properly termed an outbuilding. The effect of this contention is that the second restriction as to a residence does not apply, but that is not in harmony with the decision in the case of *Hartman v. Wolverton*, 126 Kan. 613, 270 Pac. 584, where this same residence restriction was construed and applied to similar facts as follows: .

". . . that the $800 house defendant built at the rear of the lot for a residence until he gets around to build a $2,500 house, or the $6,000 house he hopes to build sometime, is a plain breach of the restrictive clause in the deed. . . ." (p. 613.)

The same case was here a few months earlier on review of a ruling in contempt proceedings and reported in 125 Kan. 202, 263 Pac. 789.

It is urged by the defendants that the occupancy was only temporary for the purpose of watching and caring for the material on the grounds for the construction of the poultry house, and such occupancy should not be construed as such as would make the place a residence. It was also shown in the testimony that when the poultry house is completed the small building at the end thereof, now finished and occupied, is intended to be occupied as an office by the operator, who will use part of it for bedroom and other living facilities.

It is said in 54 C. J. 711:

"Many cases declare that the word (residence) indicates permanency of occupation as distinct from lodging, or boarding, or temporary occupation, and hence involves the idea of something beyond a transient stay in a place. On the other hand it has been held that the term may not imply permanency, or that 'residence' is not necessarily permanent, and may be transient in its nature."

We think the findings of the trial court that the office building in this case was made a temporary residence was sustained by the evidence, and the construction placed on the restriction as to a residence in the Wolverton cases, *supra*, is applicable to and determinative of the main issue in this case. The intended future occupancy of the office building by the operator is, strictly speaking, not before us at this time, any more than the intention to construct a $3,500 residence on the front of the lot.

While the question as to this proposed poultry house and office being an outbuilding is not now necessary to the determination of the matter here involved, it may be observed in connection therewith, since so much attention is given to the subject in the briefs, that not every building on a residence lot is an outbuilding as necessarily intended by restriction No. 4 above quoted. The restriction itself states that such outbuildings shall be "of quality and character that will not be injurious to, or hinder the sale of, any other tract or portion of said property." Bouvier's Law Dictionary (3d ed.) defines outbuilding as "something used in connection with a main building." In the case of *Blakemore v. Stanley*, 159 Mass. 6, 33 N. E. 689, where a stable was erected and used on the rear of the lot and a tent on the front part, costing less than the restricted amount of $2,000, was occupied by the family of the owner in the daytime during the summer, it was said:

"That a stable may be a necessary outbuilding may be assumed. But an outbuilding is something which is to be used in connection with a main build-

ing. . . . and as there was no main building of the kind called for by the terms of the deed, we are of opinion that the stable in this case cannot be deemed to be a necessary outbuilding." (p. 7.)

The trial court in the case at bar, in its conclusions of law, referred to the proposed poultry house as a henhouse unit, and the contemplated use thereof for the chicken business as a major business enterprise. The defendants cite numerous definitions and holdings to show that the raising of chickens or poultry is an agricultural enterprise and therefore within the first restriction, which limits the use of this property "for residence, gardening and other agricultural purposes only." There can be no question but that the raising of chickens falls within the term "agriculture." And of course a liberal construction must be used in the placing of limitations upon such restrictions, and a question of doubt must be resolved in favor of the grantee rather than the grantor for the exercise of broader privileges in case of doubt, but at the same time the broad privilege claimed must be within reasonable limitations.

In the first place, this plat of 155 acres, divided into 64 lots, is plainly intended as a residential district. Four of the five restrictions made as to the use of the lots concern residences thereon and occupancy thereof. Does the plan of keeping more than 1,200 hens on a residential lot of less than one and a half acres reasonably fall within the term "agriculture," or "for agricultural purposes"? The many definitions cited are not convincing that it does, nor does it raise such a doubt as to require, under the rule, the adoption of the broader view.

Another question is here pertinent, although not raised in the briefs, and that is, the question of the perpetuity of such restrictions. There is no time limitation as to these restrictions, and a change of condition of the property or of adjacent property or in the character of the use thereof may later preclude the enforcement of such restrictive agreements. (2 Tiffany on Real Property, 2d ed., 1456, and 4 Thompson on Real Property, 556, 559.)

The judgment is affirmed.