No. 34,734

The N. P. Dodge Corporation, *Appellant,* v. E. Calderwood et al., *Appellees.*

(101 P. 2d 883)

Opinion filed May 4, 1940.

*John M. Williams,* of Topeka, for the appellant.

No appearance was made for the appellees.

The opinion of the court was delivered by

Allen, J.: This action was to enforce certain alleged building restrictions. Judgment was for defendants. Plaintiff appeals.

On August 29, 1936, plaintiff conveyed to defendant Calderwood three lots in Belmont addition to the city of Topeka. The deed was recorded on September 4, 1936. The deed contained the following provision:

"These lots are sold and deed given on the express covenant, that no dwelling shall at any time be placed thereon of less than four rooms, and at least 400 square feet of floor space, shingle roofing, drop siding, painted, plastered or ceiled, or of brick, cement or stone, or within twenty feet of the front line of the lots, . . ."

It was alleged that since the conveyance, dwellings have been placed on the lots in violation of the restrictions. It was further alleged that the lots have been sold or leased to three named defendants who now occupy the premises; that the exact legal relationship between these defendants is unknown to the plaintiff, but that they occupy the premises in violation of the restrictions in the conveyance to Calderwood. Plaintiff prayed "for an order and decree enforcing said restrictions and requiring defendants to comply with said restrictions." The answer contained a general denial.

In rendering judgment, the court made findings of fact. The court found that the three defendants, other than Calderwood, occupied two of the three houses on the lots conveyed, but there was no evidence as to the nature of their claims—whether as owners, lessees or mere licensees. The court found that the defendant Calderwood first obtained possession under a contract dated June, 1934, and that the contract contained the same restrictions as the deed of August, 1936; that the "evidence fairly shows these were erected before the deed was executed"; that the plaintiff "knew or should have known at the time it executed the deeds that buildings which violated the restrictions it was inserting in the deed were already on these lots." These findings were supported by the evidence.

Plaintiff contends the court erred in the admission of incompetent and prejudicial evidence, in holding the dwellings were erected before the deed was issued, in holding that while Calderwood was the title holder of the property, there was no evidence to show the right, title or interest of the other defendants who occupied the property. It is also contended that the court erred in finding plaintiff knew or should have known that the dwellings violated the restrictions. We understand the main contention to be the court erred in holding that the plaintiff had waived the restrictions.

Restrictions on the use of real property are recognized in this state. (*Hartman v. Wolverton*, 126 Kan. 613, 270 Pac. 584; *Clark v. Vaughan*, 131 Kan. 438, 292 Pac. 783; *Welsh v. Flo*, 146 Kan. 807, 73 P. 2d 1084.)

These restrictions or equitable servitudes are based on the equitable principle of notice—that the person who takes land with notice of a restriction upon it will not in equity and good conscience be permitted to act in violation of these restrictions. (2 Tiffany, Real Property, 2d ed., 1425 *et seq.*, §§ 394-401; Clark, Covenants and Interests Running with Land, p. 148.)

The doctrine was stated in the leading case of *Tulk v. Moxhay* (1848), 2 Ph. 774, 41 Eng. Reprint, 1143:

"That this court has jurisdiction to enforce a contract between the owner of land and his neighbour purchasing a part of it, that the latter shall either use or abstain from using the land purchased in a particular way, is what I never knew disputed. Here there is no question about the contract: the owner of certain houses in the square sells the land adjoining, with a covenant from the purchaser not to use it for any other purpose than as a square garden. And it is now contended, not that the vendee could violate that contract, but that he might sell the piece of land, and that the purchaser from him may

violate it without this court having any power to interfere. If that were so, it would be impossible for an owner of land to sell part of it without incurring the risk of rendering what he retains worthless. It is said that, the covenant being one which does not run with the land, this court cannot enforce it; but the question is, not whether the covenant runs with the land, but whether a party shall be permitted to use the land in a manner inconsistent with the contract entered into by his vendor, and with notice of which he purchased. Of course, the price would be affected by the covenant, and nothing could be more inequitable than that the original purchaser should be able to sell the property the next day for a greater price, in consideration of the assignee being allowed to escape from the liability which he had himself undertaken.

"That the question does not depend upon whether the covenant runs with the land is evident from this, that if there was a mere agreement and no covenant, this court would enforce it against a party purchasing with notice of it; for if an equity is attached to the property by the owner, no one purchasing with notice of that equity can stand in a different situation from the party from whom he purchased. . . ." (p. 776.)

In 4 Pomeroy's Equity Jurisprudence (4th ed., pp. 3958, 3959, note) it is stated that the doctrine is known by various names in different jurisdictions. "In some jurisdictions such covenants are called covenants running with the land. Elsewhere they are said to be in the nature of easements. And in still other jurisdictions they are simply called restrictive covenants. Under whatever name, the principles applied are practically the same. . . . Even where they are called covenants running with the land it is held that they are covenants enforceable only in equity."

As these restrictions are enforceable only in equity, it is evident that we are not dealing with common-law easements, or covenants running with the land. Equity imposes a servitude on the restricted property for the benefit of property retained by the grantor or those who take from him with notice. Upon these agreements enforceable in equity the restricted districts in our cities have been developed, and the value of the property in such districts depends in a large measure upon their enforcement.

The deed to Calderwood was filed for record. The three named defendants, in possession of the property, claiming under Calderwood, are charged with notice and are bound by the restrictions. (18 C. J. 397.) Such restrictions will be enforced by injunction (32 C. J. 213) and in a proper case a mandatory injunction will lie for the removal of buildings and structures in breach of such restrictions. (32 C. J. 215.)

But it by no means follows that the plaintiff is entitled to recover in the present action. The right to enforce the restrictions or equi-

table servitude may be lost by laches, waiver or by acquiescence in the violation of the provisions of such restrictions. (32 C. J. 209.) Under the issues raised by the pleadings it was proper to show when the structures were placed on the land.

The agent of the plaintiff who lived near the property in question testified:

"I talked with Calderwood for the first time about these restrictions something like two years ago. The houses were up then, but I don't know when they were built. It was before I had anything to do with the addition and the first time that I had anything to do with the addition was about two years ago this month."

The plaintiff in his petition prays for an order enforcing the restrictions in the deed. We assume the remedy invoked is a mandatory injunction to compel the removal of the structures. But it is clear the plaintiff did not move promptly upon the discovery of the violation of such restrictions. The court found the buildings were on the ground before the deed was executed. Having stood by for a period of nearly three years with full knowledge of the violation of the agreement, the plaintiff is not in a favorable position to invoke the equity powers of the court. Equity aids the vigilant, not those who slumber on their rights. On this record a mandatory injunction was properly refused.

The judgment is affirmed.