No. 45,527

GAIL L. HECHT and SABRINA MORLAN HECHT, Husband and Wife, *Appellants,* v. DON R. STEPHENS, *Appellee.*

(464 P. 2d 258)

Opinion filed January 24, 1970.

*John R. Stallings,* of Wichita, argued the cause, and *Lawrence Weigand, Lawrence E. Curfman, Byron Brainerd, Charles W. Harris, Orval J. Kaufman, Donald A. Bell, J. L. Weigand, Jr., Spencer L. Depew, Paul M. Buchanan, Brian G. Grace, Windell G. Snow, Robert L. Roberts,* and *Winton M. Hinkle,* of Wichita, were with him on the brief for the appellants.

*Stanford J. Smith,* of Wichita, argued the cause, and *P. K. Smith, Dale B. Stinson, Jr., F. C. McMaster, Gerald D. Lasswell,* and *Michael L. Nix,* of Wichita, were with him on the brief for the appellee.

The opinion of the court was delivered by

O'CONNOR, J.: This was an injunction action directed against the violation of a restrictive covenant prohibiting trailer houses in an addition known as South Broadway Gardens, in Sedgwick county.

In 1952 the E.C.M. Corporation was the owner of Blocks 3, 4 and 5 in the said fifty-seven-lot addition. As the corporation conveyed the lots to various owners, it placed restrictions of substantially the same nature in each of the deeds. Those pertinent to this action, and found in the deed of conveyance to defendant's predecessor in title, are as follows:

"(1) Said lots shall be improved, used and occupied for residential purposes only, and no residence shall be built thereon having less than 500 sq. ft.

. . . . . . . . . . . . .

"(3) No structure shall be erected on any lot until the design, location and set-back thereof shall have been approved in writing by E.C.M. Corporation, Inc. and it shall conform and be in harmony with similar structures in the tract.

"(4) No used, secondhand or previously constructed house or building of any kind shall be moved or placed as a whole or in sections upon said lot or lots.

. . . . . . . . . . . . .

"(6) No trailer house, secondhand cars, nor junk yard of any kind shall be permitted.

"(7) No noxious or offensive trade shall be carried on upon any lot, nor shall anything be done thereon which may be or become an annoyance or a nuisance to the neighborhood.

"(8) The restrictions shall run with the land and shall be binding on the undersigned and all persons claiming under them until the 10th day of April, 1972, at which time said covenants and restrictions shall terminate."

The plaintiffs, Gail and Sabrina Hecht, purchased Lot 18, Block 4, their present residence, from E.C.M. Corporation in February 1953. The defendant, Don R. Stephens, is the owner of Lot 14, Block 4, and resides in California. The E.C.M. Corporation was dissolved January 14, 1965.

In December 1966, the Hechts had a conversation with Mrs. Adam Thompson (Stephens' sister) and her mother, and were informed by Mrs. Thompson that a mobile home was to be moved onto defendant's lot. Mr. Hecht advised Mrs. Thompson that such a home would violate the property restrictions, and that if she carried out her plans he would seek an injunction to prevent her from doing so.

The Thompsons purchased a mobile home at a cost of $4,100, and on April 2, 1967, moved it onto defendant's property. The home

was placed upon a steel foundation which was laid in cement beneath the ground. The wheels were removed and wrought iron steps and railing were constructed at the entrance. The home was equipped with running water, electricity and sewer. Mr. and Mrs. Thompson erected a porch on the mobile home at a cost of $150. In addition, they expended time and money in clearing the land, removing trees, and doing some landscaping, which included the planting of grass, flowers and shrubs and the installation of a rock garden, fish pond and wishing well.

The Hechts commenced this action approximately seven weeks after the mobile home was placed on defendant's lot. By their amended petition the Hechts sought to enjoin Stephens and all persons claiming through him from keeping a mobile home on the property, and further requested a mandatory injunction requiring defendant to remove the home.

After issues were joined the matter was tried to the district court, which entered judgment in favor of the defendant, pursuant to the following mixed findings of fact and conclusions of law:

"Third: That no effective notice or demand to cease and desist was given by Plaintiffs to Defendant prior to commencement of this action on May 23, 1967, and until substantial time and money were expended in improvement of Lot 14.

"Fourth: That said violations within the area have been so general and substantial as to indicate a purpose and intention of the residents of said area to abandon the general building plan or scheme.

"Fifth: That Plaintiffs have acquiesced in the numerous violations within the area and have abandoned the effect and enforcement of said restrictive covenants.

"Sixth: That said restrictive covenants are invalid and unenforceable."

Plaintiffs have appealed, and attack the judgment on several grounds. At the outset we note that if any one of the foregoing conclusions is sustainable, the trial court's judgment must be affirmed. Therefore, we need only to direct our attention to the "fourth" conclusion of law insofar as it bears upon changes in the character and conditions of the neighborhood.

Restrictive covenants have long been recognized in this state. These restrictions, or servitudes, are based on the equitable principle of notice. A servitude is imposed by equity on the restricted property for the benefit of property retained by the grantor, or those who take from him with notice. Thus, a person who takes land with notice of restrictions upon it will not in equity and good

conscience be permitted to act in violation thereof. (*Reeves v. Morris,* 155 Kan. 231, 124 P. 2d 488; *N. P. Dodge Corp. v. Calderwood,* 151 Kan. 978, 101 P. 2d 883; *Clark v. Vaughan,* 131 Kan. 438, 292 Pac. 783.)

The jurisdiction of equity to enforce covenants restricting the use of property is not absolute. The right to enforce the restrictions may be lost by laches, waiver, or by acquiescence in the violation of the provisions of such restrictions. (*N. P. Dodge Corp. v. Calderwood,* supra.) Additionally, where the restriction is made with reference to the continuance of existing general conditions of the property and its surroundings, and there has occurred such a change in the character of the neighborhood as to defeat the purpose of the restrictions and to render their enforcement inequitable and burdensome, a court of equity will refuse to enforce them and will leave the complainant to whatever remedy he may have at law. (*Clark v. Vaughan,* supra.)

Whether injunctive relief will be granted to restrain the violation of restrictions is a matter within the sound discretion of the trial court to be determined in the light of all the facts and circumstances. Absent manifest abuse of that discretion, the appellate court will not interfere. (*Duncan v. Academy of the Sisters of the Sacred Heart* [Mo.], 350 S. W. 2d 814.)

The lower court specifically found there had been numerous violations of the restrictive covenants—used, secondhand or previously constructed houses and buildings had been moved to and placed upon lots in the three-block area; property had been used for business purposes; and other trailer houses and secondhand cars were located within the restricted area. From this the court concluded the violations had been so general and substantial as to indicate a purpose and intention of the residents of the area to abandon the general building plan or scheme.

Highly summarized, the evidence in support of the trial court's findings discloses that there were four prefabricated houses constructed in the three-block area. Since no contention to the contrary is raised, we assume the plaintiffs concede these houses were placed on the property in violation of the restrictions. There was evidence that there were at least four businesses being conducted in the restricted area. The precise nature thereof is not shown. There was also evidence of numerous "secondhand cars" in the neighborhood. Mr. Hecht testified that this was one of the re-

strictions—"no used cars"—that he particularly was looking for when they decided to buy their property in South Broadway Gardens in 1953. There was further evidence of one other trailer home located in the three-block area, and in addition, there were other mobile homes located on the street directly adjacent to the east edge of the addition. Two blocks west of South Broadway Gardens was a trailer court, and in between were "quite a few" mobile homes.

While the court, in determining whether there has been such a change of conditions as to warrant refusal to enforce a restriction, must give greater weight to those changes occurring within a restricted area, it is not necessarily precluded from considering the changes also occurring nearby and outside the area (see, *Clark v. Vaughan,* supra; 20 Am. Jur. 2d, Covenants, Conditions, Etc. § 284), especially if enforcement of the particular restriction would be inequitable and without appreciable benefit to property in the restricted area (*Thodos v. Shirk,* 248 Iowa 172, 79 N. W. 2d 733).

As previously indicated, South Broadway Gardens consists of fifty-seven lots. There was testimony by five property owners in the restricted area to the effect they did not feel the mobile home in question adversely affected the enjoyment and use of their properties, and all expressed a desire that it remain. Several of them, including a neighbor of the Thompsons, described the mobile home as being an asset to the area. There was also testimony they no longer considered the restrictions of any value. The parties stipulated that the testimony of forty-one other witnesses would be the same. Other than the plaintiffs, there were no owners or residents who testified in support of the covenant against a trailer house being located in the area.

The extent of change in a neighborhood which will justify refusal to enforce restrictive covenants has not given rise to any hard-and-fast rule. Each case must rest on the equities of the situation as it is presented. A basic principle woven as a thread throughout all the decisions is that to warrant refusal of equitable relief, the change in conditions must be so great or radical as to neutralize the benefits of the restriction and destroy its purpose. (*Metropolitan Investment Company v. Sine,* 14 Utah 2d 36, 376 P. 2d 940; *Wallace v. St. Clair,* 147 W. Va. 377, 127 S. E. 2d 742; 20 Am. Jur. 2d, Covenants, Conditions, Etc. § 282; 26 C. J. S., Deeds § 171c;

Anno. 4 A. L. R. 2d 1111; 7 Thompson on Real Property [1962 Replacement] § 3174.)   As expressed in *Thodos v. Shirk,* supra:

". . . [T]here must be a change in the character of the surrounding neighborhood sufficient to make it impossible any longer to secure in a substantial degree the benefits sought to be realized through the performance of the building restriction. . . ." (pp. 186-187.)

The same principle was recognized and applied by this court in *Clark v. Vaughan,* supra. There, injunctive relief was denied to the plaintiff who, for herself and others similarly situated, sought to enforce a restrictive covenant entered into by them and the parents of defendant whereby they agreed not to sell, devise, convey, lease or sublease property owned by them at anytime within fifteen years to person or persons of the African race, blood or descent. The constitutionality of the provision was not challenged. Nevertheless, the trial court's decision was upheld on the basis that such a change in the character of the neighborhood had occurred so as to defeat the purpose of the restriction. Hence, the conclusion that the enforcement of the contract against the defendants and their property would be burdensome and inequitable was justified.

Whether injunctive relief against violation of a restriction will be granted or withheld because of a change in the character of the neighborhood depends upon a number of factors, among which are the purpose for which the restriction was imposed, the location of the changed condition in relation to the restricted area, the type of change that has taken place, and to some extent, the unexpired term of the restriction. Cases in which these factors, as well as others, are mentioned may be found in the annotation in 4 A. L. R. 2d 1111 and 1 A. L. R. 2d Later Case Service, p. 437.

One of the most obvious purposes of the restrictions here was to insure that South Broadway Gardens be improved and occupied for residential purposes, with structures in conformity to and in harmony with the general building plan of the area. There had been substantial changes in the character and nature of the addition since 1953, as evidenced by the findings of the trial court in respect to the numerous violations of the restrictive covenants. In addition, there was evidence of a number of mobile homes in the surrounding neighborhood. Inasmuch as equitable relief is being sought, the benefit of the restriction against trailer houses, as related to plaintiffs' property, must be considered in light of the over-all changes that had taken place in the area. There is no doubt that the

numerous changes seriously affected the purpose and object for which the restrictions were originally imposed. In view of the many violations and the substantial changes occurring throughout the neighborhood, we are inclined to accept the view expressed by the majority of the property owners in the addition—that the restriction against trailer houses, with which we are only concerned, was no longer of substantial value, and that the mobile home in question did not have a deleterious effect on the area. That is to say, changes in the neighborhood had been so substantial as to neutralize the benefits of the restriction as originally envisioned to the point of defeating its purpose.

At the same time, although the mobile home violated a specific restriction, its location on defendant's lot by no means destroyed the residential character of the addition. We are favored in the record by pictures of the home and other houses and structures in the area which undoubtedly weighed heavily in the trial court's decision. The manner in which the mobile home was placed on the property with its semipermanent foundation, the landscaping, and general improvement of the lot have already been described. In relation to other houses in the neighborhood, its attractiveness cannot be disputed. As described by neighbors, it was an asset to the area. In essence, this appears to be a case where the owners of one lot in an entire addition are pitted against the other owners and insist upon strict observance of a restriction against house trailers despite changes in the neighborhood which have substantially impaired the value of the restriction as it pertains to plaintiffs' property.

The granting of injunctive relief to enforce a restrictive covenant is discretionary, and does not follow as a matter of right. Under all the circumstances, we are of the opinion enforcement of the restriction, which by its terms expires in 1972, would be inequitable and of no substantial benefit to plaintiffs.

The trial court did not abuse its discretion in denying an injunction, and the judgment is affirmed.

FONTRON, J., dissenting: I am unable to comprehend the court's conclusion that it would be inequitable to enforce the restrictive covenant against this defendant. The evidence is undisputed that defendant's sister and his mother were both informed by the plaintiffs some months previously that the trailer house they planned to

move onto defendant's lot would violate the restrictive covenant against trailer houses and that the plaintiffs would file an injunction if the trailer was placed there.

Notwithstanding this advance warning, the sister and her husband, Mr. and Mrs. Thompson, proceeded to purchase and install the trailer on the defendant's lot. In so doing they knowingly violated a restriction of long standing and bought themselves a lawsuit. Under these circumstances I see no inequity resulting to the defendant or to the Thompsons from the enforcement of the covenant. To the contrary, as I view the matter, the refusal to enforce the restriction results in injustice to the plaintiffs.

Restrictive covenants of the nature involved here, are not strangers to this court, nor has their enforcement been lightly refused. In *N. P. Dodge Corp. v. Calderwood*, 151 Kan. 978, 101 P. 2d 883, cited in the majority opinion, we spoke on the subject as follows:

"Restrictions on the use of real property are recognized in this state. (*Hartman v. Wolverton*, 126 Kan. 613, 270 Pac. 584; *Clark v. Vaughan*, 131 Kan. 438, 292 Pac. 783; *Welsh v. Flo*, 146 Kan. 807, 73 P. 2d 1084.)

"These restrictions or equitable servitudes are based on the equitable principle of notice—that the person who takes land with notice of a restriction upon it will not in equity and good conscience be permitted to act in violation of these restrictions. (2 Tiffany, Real Property, 2d ed., 1425 *et seq.*, §§ 394-401; Clark, Covenants and Interests Running with Land, p. 148.)" (p. 979.)

While it is true that the right to enforce a restrictive covenant may be lost through laches or waiver (*N. P. Dodge Corp. v. Calderwood*, supra) no circumstances have been shown here which would justify application of either doctrine. The Thompsons were warned of the consequences some three months before they bought and installed the trailer, and the present suit was filed within 60 days from the time plaintiffs became aware of the violation. The present case presents an entirely different picture from that depicted in the *Dodge* case where the plaintiff stood by for nearly three years with full knowledge of the violation before taking legal action.

Furthermore, *Clark v. Vaughan*, 131 Kan. 438, 292 Pac. 783, from a factual standpoint, provides small support for the majority opinion. In that case there was testimony to the effect that enforcement of the restriction against the Vaughan lots would unduly burden them, while sale of their property, freed of the limitation, would not further depreciate the value of the plaintiffs' premises. I find no evidence of similar import in this case.

The numerous "violations" to which the court refers as being so substantial as to indicate a purpose on the part of area residents to abandon or to destroy the restrictive covenants turn out to be somewhat puny when subjected to close scrutiny. One small uninhabited trailer is located on part of a lot three blocks from plaintiff's residence; four prefabricated houses are mentioned; four businesses are said to have been started, the nature of which are not shown. There are no used car lots in the addition but some used cars are there—but what residential area is without them?

But violations, alone, do not constitute sufficient reason to refuse enforcement of a restrictive covenant. In *Hartman v. Wolverton,* 126 Kan. 613, 270 Pac. 584, an $800 dwelling had been erected on the defendant's lot in violation of a restrictive covenant which prohibited the construction of any residence costing less than $2,500. It was claimed by the defendant that the house was only a temporary residence for use until he could get around to building a better one and that other temporary residences had been permitted in the restricted area. In granting relief to the plaintiff, this court said:

". . . and the fact that other lot owners heretofore have been permitted to build temporary residences on their lots in disregard of the restrictive clause is of no consequence." (p. 614.)

In my judgment the plaintiffs are entitled to a decree enforcing the plain and unambiguous restriction against trailer houses even though this court opines that enforcement would not benefit the plaintiffs. Manifestly the Hechts believe otherwise. While the restriction has but two more years to run (although it had six years to go when this lawsuit begun its tortuous trip through the courts) who may say with certainty that plaintiffs will reap no benefit from the removal of the trailer house just three short lots away?

In a dissenting opinion in *Clark v. Vaughan,* supra, Mr. Justice Jochems employed the following language which to me appears pertinent to the circumstances here present:

"In the development of the modern city restrictive covenants are becoming a matter of great moment. Their enforcement becomes important to progressive town building. Courts should not hesitate to extend the strong arm of equity to safeguard and enforce valid covenants where the parties entitled to the benefit thereof have not waived them or permitted their breach under such circumstances as to create an estoppel." (p. 447.)

This is language which I can understand and approve. Accordingly, with due respect to my colleagues, I am obliged to dissent.