(136 P.3d 957)
No. 94,224

JEREMIAH 29:11, INC., *Appellee*, v. EARNEST DOUGLAS (DOUG) SEIFERT and LESLIE R. SEIFERT, *Appellants*.

Opinion filed June 30, 2006.

*Daryl Ahlquist*, of Hines & Ahlquist, P.A., of Erie, for the appellants.

*Kenneth G. Gale*, of Adams & Jones, Chartered, of Wichita, and *Jeffrey A. Chubb*, of Scovel, Emert, Heasty & Chubb, of Independence, for the appellee.

Before GREENE, P.J., PIERRON and CAPLINGER, JJ.

PIERRON, J.: Ernest Douglas (Doug) and Leslie R. Seifert appeal the trial court's denial of their counterclaim for enforcement of

restrictive covenants in a transfer of property from 1978. The Seiferts argue the restrictive covenants are enforceable against Jeremiah 29:11, Inc., (Jeremiah); the deed was a deed poll or warranty deed and not an indenture; the transaction did not meet the requirements of the statute of frauds; and the transfer in 1978 gave adequate notice to subsequent purchasers of the restrictive covenant. We reverse and remand with instructions.

The facts in this case are for the most part undisputed. On March 8, 1978, G. Weaver Jordan and J.E. Jordan executed a document entitled "Warranty Deed" selling approximately 50 acres to Daniel and Pearline Dallinga for $25,000. In the 1978 deed, after the granting provisions, there are three restrictive covenants listed as follows:

"1. No manufacturing or commercial enterprise or enterprise of any kind shall be maintained on, in front of, or in connection with the property hereby conveyed, nor shall such property in any way be used for other than strictly residential purposes. This restriction shall not be construed, however, as preventing the operation of a small scale farming enterprise other than a feed lot.

"2. The property conveyed herein shall not be subdivided into building lots nor shall more than one private residence be erected or placed on said property.

"3. No mobile home or house trailer shall be located or occupied on the property hereby conveyed.

"It is understood and agreed that this conveyance is made and accepted and the realty is hereby granted, on and subject to the above covenants, conditions, restrictions, and reservations, which covenants, conditions, restrictions and reservations shall apply to and run with the conveyed land."

The 1978 deed ends with lines for the signatures of both grantors and both grantees. The Jordans had notarized signatures on the signature lines for the grantors, but there are no signatures on the lines for the grantees. The deed was filed of record in Montgomery County on March 10, 1978.

Several conveyances of this property occurred after 1978, but none of the conveyances specifically referenced the restrictions set forth in the 1978 transfer between the Jordans and the Dallingas. A couple of the warranty deed transfers had a general proviso limiting the transfer by easements, conditions, restrictions, and limitations of record. Jeremiah obtained the property in question by

general warranty deed on August 4, 1999. The Seiferts own property adjacent to Jeremiah that was previously owned by the Jordans.

This case started as a boundary line dispute initiated by Jeremiah against the Seiferts concerning a fence constructed approximately 25 years ago. The Seiferts filed a counterclaim against Jeremiah for enforcement of the restrictions and covenants set forth in the 1978 transfer of the property. Jeremiah uses the property as a leadership training center for pastors and leaders of nonprofit corporations, as well as a boy scout camp. The Seiferts alleged that Jeremiah's use violated the commercial enterprise restriction.

The trial court's findings regarding the original boundary line dispute are not at issue in this appeal. After a full trial, the court held that the 1978 restrictive covenants were void and unenforceable against Jeremiah. The court held the 1978 warranty deed was a mutual or indenture deed requiring the signatures of both the grantors and grantees, and since the grantees did not sign the deed, as a matter of law, the grantees did not accept the restrictive covenant contained therein. The court clarified that the indenture deed was not a "deed poll" and that as a matter of law, the parties intended that the grantees' signatures be obtained before the deed should be effective. The court found the deed indicated that the parties intended that the grantees should sign the deed and without the signature it was unenforceable as failing to comply with the statute of frauds. The court also found there was no actual or constructive notice of the restrictive covenants to Jeremiah and without notice and the incomplete indenture deed, the restrictions were unenforceable. The court held:

"The Court further finds as a matter of law that Plaintiff's Exhibit A was effective to convey title but not effective to provide notice to the Plaintiff concerning the restrictive covenants and that the Plaintiff was not placed on notice that the restrictive covenants were in effect and, therefore, unenforceable against the Plaintiff."

On appeal, the Seiferts argue the trial court erroneously held that the restrictive covenants contained in the 1978 deed were unenforceable against Jeremiah. Seiferts contend the 1978 deed was a valid warranty deed and the restrictive covenants contained

in the deed were appurtenant to the land and were binding on subsequent owners.

Under the general principles of contract interpretation, deeds are to be construed in accordance with the intent and purpose of the grantors after examination of the entire instrument under consideration, and where there is no ambiguity or uncertainty in a deed, and where the intention of the grantor is clearly and unequivocally expressed, there is no occasion for employing rules of construction. See generally *Zukel v. Great West Managers, LLC*, 31 Kan. App. 2d 1098, 1101, 78 P.3d 480 (2003), *rev. denied* 277 Kan. 928 (2004). "The interpretation and legal effect of written instruments are matters of law, and an appellate court exercises unlimited review. Regardless of the construction given a written contract by the trial court, an appellate court may construe a written contract and determine its legal effect. [Citation omitted.]" *Unrau v. Kidron Bethel Retirement Services, Inc.*, 271 Kan. 743, 763, 27 P.3d 1 (2001).

K.S.A. 58-2203 addresses the requirements for a valid warranty deed:

"Any conveyance of lands, worded in substance as follows: A.B. conveys and warrants C.D. (here describe the premises), for the sum of (here insert the consideration), the said conveyance being dated, duly signed and acknowledged by the grantor, shall be deemed and held a conveyance in fee simple to the grantee, his or her heirs and assigns, with covenants from the grantor, for himself or herself and his or her heirs and personal representatives, that the grantor is lawfully seized of the premises, has good right to convey the same and guarantees the quiet possession thereof, that the same are free from all encumbrances, and the grantor will warrant and defend the same against all lawful claims."

Blacks' Law Dictionary 770 (6th ed. 1990) defines "Indenture" as:

"In real estate conveyancing, a deed to which two or more persons are parties, and in which these enter into reciprocal and corresponding grants or obligations towards each other; whereas a deed-poll is properly one in which only the party making it executes it, or binds himself by it as a deed, though the grantors or grantees therein may be several in number."

Black's Law Dictionary 414 (6th ed. 1990) defines "Deed Poll" as: "A deed which is made by one party only. A deed in which only

the party making it executes it or binds himself by it as a deed." Black's also defines "Warranty deed" as: "Deed in which grantor warrants good, clear title. A deed which explicitly contains covenants concerning the quality of title it conveys. In some states, statutes impute warranties or covenants from the use of specific words, such as 'grant.' " Black's Law Dictionary 1589. See 23 Am. Jur. 2d, Deeds § 3.

The only substantive reference to a deed poll in Kansas jurisprudence occurred over a century ago in *Akin v. Davis*, 11 Kan. 580, 584-85 (1873):

"The words in the above instrument making the grant, or giving the license, are all in the name of Davis: 'I, L. F. Davis' agree that the defendants shall have the right to flow back the water, 'and I do further hereby waive my right to recover damages,' 'provided,' etc., 'and provided further,' etc. To all of which 'I hereby bind myself, my heirs,' etc.; 'sealed with my seal,' etc. Nowhere and in no instance throughout the entire instrument, is there any covenant, agreement or promise on the part of the defendants (plaintiffs in error) that they would do anything whatever. It is Davis who bargains, covenants, and agrees and waives, with provisos, limitations and restrictions. It is simply a deed-poll from Davis to defendants. 2 Washb. Real Prop. 588; 7 Bouv. Law Dict., Deed-Poll. See also 2 Metc., 180; 9 Metc., 405; 14 Gray, 443."

Applying the above cited rules of interpretation and generally recognized definitions, we agree with the trial court that the 1978 deed between the Jordans and the Dallingas was intended to be an indenture deed, not a deed poll, and correctly conveyed title using an indenture deed form. The 1978 deed meets all the requirements for a valid warranty deed set forth in K.S.A. 58-2203. There is no requirement in K.S.A. 58-2203 that the conveyance be duly signed and acknowledged by the grantee, only the grantor. The deed clearly set forth the intention of the grantors, in plain, simple, and concise language, and there is no occasion for employing rules of judicial construction. *Davis v. Vermillion*, 173 Kan. 508, 249 P.2d 625 (1952). The provisions of the deed make it clear that the Jordans, as grantors, conveyed the property to the Dallingas, as grantees, for $25,000. There is no confusion in the description of the real estate. There was valuable consideration exchanged in the transfer. There are no ambiguities in the restrictive covenants.

There is also no evidence presented to the contrary that the Dallingas paid the $25,000 for the property and lived within the confines of the restrictive covenants. There is no evidence the Dallingas rejected the restrictive covenants. The 1978 deed was properly and timely recorded. However, the trial court stated: "The grantees did not sign the deed and did not as a matter of law accept the restrictive covenant contained therein." We disagree.

The evidence indicates the Dallingas accepted the benefits and detriments of the warranty deed transfer. Had the Dallingas signed the 1978 warranty deed, there is no question the restrictions would run with the land. However, the lack of a signature by the Dallingas in this case does not void the restrictive covenants. Acceptance of a deed by the grantee is necessary, but in the absence of evidence to the contrary, acceptance will be presumed. *Hansen v. Walker*, 175 Kan. 121, 124, 259 P.2d 242 (1953); see also *Bowman v. Walnut Mtn.*, 251 Ga. App. 91, 95-96, 553 S.E.2d 389 (2001) ("By accepting a deed with covenants and restrictions, the grantee voluntarily consents to be bound by such covenants."). When the conveyance is clearly beneficial to the grantee, not only is acceptance presumed, but "it has been held that this presumption is not overcome by anything short of the actual dissent of the grantee." *Wuester v. Folin*, 60 Kan. 334, 337-38, 56 Pac. 490 (1899).

There is really no evidence to the contrary that the Jordans and the Dallingas also intended the restrictive covenants to be appurtenant or to run with the land. The clear and unambiguous language of the 1978 deed stated: "It is understood and agreed that this conveyance is made and accepted and the realty is hereby granted, on and subject to the above covenants, conditions, restrictions, and reservations, which covenants, conditions, restrictions and reservations shall apply to and run with the conveyed land." The parties do not give much argument to the fact that the 1978 deed also meets the requirements for creating a valid appurtenant covenant, namely that the covenant is in writing, must touch and concern the land, privity of estate, and notice. See *Schlup v. Bourdon*, 33 Kan. App. 2d 564, 569, 105 P.3d 720 (2005).

The critical issue for determination is what effect, if any, the lack of the Dallingas' signatures on the indenture deed has on subse-

quent owners of the property. As indicated above, the Dallingas were clearly subject to the restrictive covenants. The trial court held that the 1978 deed was "effective to convey title but not effective to provide notice to the Plaintiff concerning the restrictive covenants." Again, we disagree.

The rules governing the construction of covenants imposing restrictions on the use of realty are the same as those applicable to any contract or covenant, including the rule that, where there is no ambiguity in the language used, there is no room for construction, and the plain meaning of the language governs. When construction is necessary, the language used will be given its obvious meaning. *Zukel*, 31 Kan. App. 2d at 1101.

We recognize another well-settled rule that covenants and agreements restricting the free use of property are strictly construed against limitations upon such use. Such restrictions will not be aided or extended by implication or enlarged by construction. Doubt will be resolved in favor of the unrestricted use of property. 20 Am. Jur. 2d, Covenants, Conditions and Restrictions § 16, p. 568. In *Welsh v. Flo*, 146 Kan. 807, 811, 73 P.2d 1084 (1937), the Kansas Supreme Court stated:

"And of course a liberal construction must be used in the placing of limitations upon such restrictions, and a question of doubt must be resolved in favor of the grantee rather than the grantor for the exercise of broader privileges in case of doubt, but at the same time the broad privilege claimed must be within reasonable limitations."

The enforceability of restrictive covenants has its origin in common law and has long been recognized in the state of Kansas. *McColm v. Stegman*, 3 Kan. App. 2d 416, 419-20, 596 P.2d 167 (1979). Enforceability is based on the equitable principle of notice, whereby a person who takes land with notice of a restriction upon it will not be permitted to act in violation of that restriction. *Hecht v. Stephens*, 204 Kan. 559, 561-62, 464 P.2d 258 (1970). Persons who take real property with notice of restrictive covenants will not be permitted to act in violation thereof and may be enjoined in equity. *Kennedy v. Classic Designs, Inc.*, 239 Kan. 540, Syl. ¶ 2, 722 P.2d 504 (1986).

The trial court found that because the indenture deed form used in the 1978 deed failed to comply with the statute of frauds as a contract relating to an interest in real estate that was not signed by the grantees against whom the contract would be enforceable, it, therefore, was unenforceable and void. Consequently, it was unenforceable against subsequent owners such as Jeremiah as well. The court also held that since the deed failed to comply with the statute of frauds, the deed was not effective to provide notice to Jeremiah concerning the restrictive covenants and they were unenforceable. We disagree.

Jeremiah had constructive notice of the restrictive covenants in question. K.S.A. 58-2222 provides:

"Every such instrument in writing, certified and recorded in the manner hereinbefore prescribed, shall, from the time of filing the same with the register of deeds for record, impart notice to all persons of the contents thereof; and all subsequent purchasers and mortgagees shall be deemed to purchase with notice."

Jeremiah's claim that since the 1978 warranty deed was not signed by the grantee then the covenants were not enforceable is a legal conclusion not yet determined when Jeremiah purchased the property. There has been no challenge to the fact that the 1978 deed was properly filed. Kansas courts charge parties with constructive notice of public records. The fact that Jeremiah's title company did not find this public document does not make the covenants unenforceable against Jeremiah. In *Travis v. Glick*, 150 Kan. 132, 141, 91 P.2d 41 (1939), the Kansas Supreme Court held that a party charged with constructive notice cannot claim ignorance of public records in order to toll the statute of limitations. Similarly, subsequent purchasers of real estate are charged with constructive notice of the presence and contents of recorded interests in land, if sufficiently described, even when they were not a party to the conveyance and when the interest was not properly indexed by the register of deeds. *Luthi v. Evans*, 223 Kan. 622, 629, 576 P.2d 1064 (1978).

We do not have a statute of frauds problem in this case. K.S.A. 33-106 generally provides that no action shall be brought upon any contract for the sale of lands, tenements, or hereditaments, or any

interest in or concerning them "unless the agreement upon which such action shall be brought, or some memorandum or note thereof, shall be in writing and signed by the party to be charged therewith, or some other person thereunto by him or her lawfully authorized in writing." The statute of frauds is intended to protect parties from agreements not reduced to writing. See, *e.g.*, *Bank of Alton v. Tanaka*, 247 Kan. 443, 452, 799 P.2d 1029 (1990) (the statute of frauds renders an oral agreement unenforceable unless there are equitable considerations that remove it from the statute's application).

In this case we have no allegation of promises or agreements that were not included in the 1978 warranty deed. The complete agreement was reduced to writing. Both the acceptance of the deed by the Dallingas and the failure of the Dallingas to reject the deed as improperly filed with the register of deeds satisfy the statute of frauds in this case and impose the undertakings in the deed upon the Dallingas and subsequent owners. Therefore, the covenants which ran with the land were not invalid for the grantee's omitted signature on the deed.

Rulings which support the finding that a grantee may be bound by covenants in a deed which is accepted but not signed by the grantee can be found in *Schmucker v. Sibert*, 18 Kan. 104, 111-12 (1877); *Republic Steel Corporation v. Payne*, 272 Ala. 483, 132 So. 2d 581, 584; *Murphy v. Gray*, 84 Ariz. 299, 327 P.2d 751 (1958); *Neblett v. Placid Oil Company*, 257 So. 2d 167, 170, (La. App. 1972); *Armstrong v. Ledges Homeowners Ass'n, Inc.*, 174 N.C. App. 172, 178, 620 S.E.2d 294 (2005); and *Daniel v. Wray*, 158 N.C. App. 161, 580 S.E.2d 711 (2003).

Although we have thus far reversed the trial court's decision based on our finding that the restrictive covenants are enforceable against Jeremiah, we note the court's failure to address the "Release of Covenants" of the restrictions executed by the Jordans. This issue has not, therefore, been argued to us. The court admitted the release over the objections of defense counsel and reserved a decision on what effect the release had on the situation.

Building restrictions may be released, waived, or abandoned, or the right to enforce them may be lost by estoppel. See *Pool v.*

28

*Denbeck*, 196 Neb. 27, 241 N.W.2d 503 (1976); 20 Am. Jur. 2d Covenants § 226, p. 751. Restrictive covenants exist for the benefit of owners of land and may be waived or released by them. See *Lauber v. Martin*, 37 A.D.2d 754, 323 N.Y.S.2d 357 (1971); *Trustees of Columbia College v. Lynch*, 70 N.Y. 440 (1877). However, these cases may not be dispositive here, depending on the facts. We especially find significant the fact that the persons allegedly releasing the covenant are no longer owners of the property.

We reverse but remand for the trial court's consideration of whether the Jordans' release of the covenants released Jeremiah from the enforcement of the restrictive covenants.

Reversed and remanded with instructions.

GREENE, J., concurring: I agree with the majority's opinion in all respects, except as to the need for remand to include consideration of the Jordans' Release of Covenants. I believe such remand is unnecessary for the following reasons.

The Release of Covenants is contained in the record on appeal and reflects an instrument executed by the Jordans on August 7, 2002, releasing the restrictive covenants "after the date of the execution of this instrument." From the undisputed facts, the Jordans had absolutely no interest in the property on said date. Accordingly, it is apparent from the face of the instrument that the purported release has no legal effect.

It is a fundamental principle of property law that one cannot convey an interest greater than one possesses in said property on the date of the purported conveyance. See 23 Am. Jur. 2d, Deeds § 7. A grantor who has previously disposed of title in land cannot later transfer that title to a subsequent grantee. *Johnson v. Allen*, 178 Kan. 348, 352, 285 P.2d 765 (1955). Similarly, one who has long since conveyed his or her fee simple interest in real estate cannot release restrictive covenants imposed during his or her ownership, especially where such covenants were expressly made to "apply to and run with the conveyed land."

The Jordans' Release of Covenants is of no legal moment. No remand is necessary to so conclude.