No. 94,224

Jeremiah 29:11, Inc., *Appellee*, v. Earnest Douglas (Doug) Seifert and Leslie Seifert, *Appellants*.

(161 P.3d 750)

Opinion filed July 13, 2007.

*Daryl D. Ahlquist*, of Hines & Ahlquist, P.A., of Erie, argued the cause and was on the briefs for appellants.

*Kenneth G. Gale*, of Adams & Jones, Chartered, of Wichita, argued the cause, and *Jeffrey A. Chubb*, of Scovel, Emert, Heasty & Chubb, of Independence, was with him on the briefs for appellee.

The opinion of the court was delivered by

Beier, J.: This appeal requires us to evaluate whether a subsequent purchaser is bound by a restrictive covenant contained in a recorded 1978 deed unsigned by the original parties to be bound by the covenant.

*Factual and Procedural Background*

The pertinent facts are straightforward and undisputed.

On March 8, 1978, G. Weaver Jordan and J. E. Jordan executed a document titled "WARRANTY DEED," which described and conveyed approximately 50 acres to Daniel and Pearline Dallinga for $25,000. After its granting provisions, the deed set forth three restrictive covenants, including the following language:

"In consideration for said conveyance, Daniel W. Dallinga and Pearline B. Dallinga, husband and wife, for themselves, [their heirs], executors, administrators, successors and assigns, hereby jointly and severally covenant with G. Weaver Jordan and J. E. Jordan, husband and wife, their heirs, executors, administrators, successors and assigns that:

"1. No manufacturing or commercial enterprise or enterprise of any kind shall be maintained on, in front of, or in connection with the property hereby conveyed, nor shall such property in any way be used for other than strictly residential purposes. This restriction shall not be construed, however, as preventing the operation of a small scale farming enterprise other than a feed lot.

. . . .

"It is understood that this conveyance is made and accepted and the realty is hereby granted, on and subject to the above covenants, conditions, restrictions, and reservations, which covenants, conditions, restrictions and reservations shall apply to and run with the conveyed land."

Although the deed included lines for the signatures of both grantors and both grantees, the Dallingas never executed it. The deed was filed of record in Montgomery County 2 days later, on March 10, 1978. The Dallingas took possession of the land, built a house on it, and abided by the deed's restrictive covenants during the period of their ownership.

Several conveyances of the property occurred later. None of the documents for those transactions specifically referenced the restrictive covenants set forth in the 1978 deed, although more than one generally mentioned limitations "of record." Plaintiff Jeremiah 29:11, Inc. (Jeremiah), a nonprofit corporation, obtained the property in question by general warranty deed in August 1999. The title company involved in the transaction did not alert it to any potential cloud. By that time, defendants Doug and Leslie Seifert owned the adjacent property previously owned by the Jordans.

The appellate record details the following procedural history.

This action began as a boundary dispute concerning a fence constructed over 25 years ago. Jeremiah sued the Seiferts. During the litigation, the Seiferts became aware that Jeremiah planned to use or was using its property for nonresidential purposes. They therefore counterclaimed to enforce the 1978 restrictive covenant barring commercial enterprises.

After trial, the district judge held that the 1978 restrictive covenant was void and unenforceable against Jeremiah because it was contained in a mutual or indenture deed requiring the signatures of both the grantors and grantees, as opposed to a deed poll, which would have required only the signature of the grantors. In the district judge's view, the form of the 1978 deed made it "clear as a matter of law . . . that the parties intended that the grantees' signatures be obtained before the deed should be effective," and the absence of the Dallingas' signatures meant they had not accepted the restrictive covenant on commercial enterprises. In addition, the district judge ruled, the deed form "failed to comply with the Statute of Frauds as a contract relating to an interest in real estate" because it was "not signed by the grantees against whom the contract would be enforceable." The district judge also accepted Jeremiah's argument that it had no actual notice of the covenant, and he ruled that it could not be charged with constructive notice because of the lack of the Dallingas' signatures on the recorded deed.

On appeal to the Court of Appeals, the Seiferts persuaded the panel that the 1978 deed was a valid warranty deed and that the restrictive covenant was appurtenant to the land and binding on Jeremiah as a subsequent owner. The panel agreed with the district judge that the 1978 deed was intended to be an indenture deed, not a deed poll, and that it effectively conveyed title. However, the panel disagreed with the district judge's ultimate conclusion on unenforceability of the covenant. See *Jeremiah 29:11 v. Seifert*, 36 Kan. App. 2d 19, 24, 136 P.3d 957 (2006).

The panel observed that the deed met all the requirements for a valid warranty deed set forth in K.S.A. 58-2203, which requires only intent by the grantor and not signatures of the grantees; that the Dallingas had paid valuable consideration for the transfer; that

there was no ambiguity in the description of the land or the language of the restrictions; that there was no evidence other than the absence of signatures that the Dallingas had meant to reject the restrictive covenant; and that the deed was properly and timely recorded. 36 Kan. App. 2d at 23-24.

Because the Dallingas had accepted the benefits and detriments of the 1978 transfer, the panel held, they were "clearly subject to the restrictive covenants" and so was Jeremiah. 36 Kan. App. 2d at 25. The panel considered the recorded deed sufficient to give Jeremiah constructive notice of the covenant, even if the title company had not noted the potential import of the 1978 deed. 36 Kan. App. 2d at 24-26 (citing *Luthi v. Evans*, 223 Kan. 622, 629, 576 P.2d 1064 [1978]). The panel also reversed the district judge's ruling that the 1978 deed failed to comply with the statute of frauds. 36 Kan. App. 2d at 26-27.

Finally, although it does not appear that the parties had raised the issue, the Court of Appeals panel noted that the district judge had failed to address a "Release of Covenants" executed by the Jordans at the request of Jeremiah's title company on August 7, 2002. 36 Kan. App. 2d at 27. A majority of the panel remanded for consideration of the legal effect of the document, which had been introduced into evidence before the district court; Court of Appeals Judge Richard D. Greene concurred in the majority's result and reasoning on the enforceability issue, but he would not have remanded for consideration of the release because the Jordans no longer had an interest in the property at the time it was executed. 36 Kan. App. 2d at 27-28.

In its petition for review to this court, Jeremiah stated that the 1978 deed was meant to be an *effective* indenture deed. Nevertheless, it argued that the Restatement (Third) of Property: Servitudes (2000), which the Court of Appeals had failed to address, provides that an indenture deed requires the signature of the grantor and grantee; because the grantees' signatures were missing, the restrictive covenant was unenforceable. Jeremiah also argued that the Court of Appeals erred in presuming the grantees' acceptance of title constituted acceptance of the restrictive covenant; that the Court of Appeals misapplied the warranty deed statute, K.S.A. 58-

2203; and that the Court of Appeals unreasonably imposed the burden of constructive notice on Jeremiah because, on its face, the absence of the grantees' signatures on the 1978 deed evidenced no acceptance of the covenant it contained. Jeremiah also argued that the statute of frauds was not satisfied by the 1978 deed.

### Standard of Review

No factual disputes are before us. The enforceability of a restrictive covenant contained in a written deed raises only a question of law, reviewable de novo by this court. See *City of Roeland Park v. Jasan Trust*, 281 Kan. 668, 672, 132 P.3d 943 (2006).

### Analysis

The general enforceability of restrictive covenants has its origin in common law and has long been recognized in the state of Kansas. *McColm v. Stegman*, 3 Kan. App. 2d 416, 419, 596 P.2d 167 (1979). In order for such a covenant to run with the land, *i.e.*, bind a subsequent owner, the grantor and grantee must intend that the covenant run with the land; the covenant must touch and concern the land; and there must be privity of estate between the original parties to the covenant, the original parties and the present litigants, or between the party claiming the benefit of the covenant and the party burdened. In addition, the covenant must be in writing, and the successor to the burden must have had notice of it. *Schlup v. Bourdon*, 33 Kan. App. 2d 564, 569, 105 P.3d 720 (2005) (citing 21 C.J.S., Covenants § 25).

Notice is key. It makes enforcement of a restrictive covenant against a subsequent landowner equitable. See *Hecht v. Stephens*, 204 Kan. 559, 561-62, 464 P.2d 258 (1970). Persons who take real property with notice of restrictive covenants will not be permitted to act in violation of them. *Kennedy v. Classic Designs, Inc.*, 239 Kan. 540, Syl. ¶ 2, 722 P.2d 504 (1986).

There apparently is no dispute that actual notice to Jeremiah was lacking here. We thus consider whether the recording of the 1978 deed provided constructive notice.

Article 22 of Chapter 58 of the Kansas Statutes governs conveyances of land. Specifically, K.S.A. 58-2221 provides now and pro-

vided in 1978 that every instrument in writing that conveys real estate

"may be recorded in the office of register of deeds of the county in which such real estate is situated. It shall be the duty of the register of deeds to file the same for record immediately . . . . If the register of deeds finds such instrument contains apparent errors, the register of deeds shall not record the instrument until the grantee has been notified, if such notice is reasonably possible."

The next statutory section, also the same through 1978 to the present, sets forth the legal effect of the filing of such instruments:

"Every such instrument in writing, certified and recorded in the manner hereinbefore prescribed, shall, from the time of filing the same with the register of deeds for record, impart notice to all persons of the contents thereof; and all subsequent purchasers and mortgagees shall be deemed to purchase with notice." K.S.A. 58-2222.

And, finally, K.S.A. 58-2223, whose wording also has not changed at any time pertinent, emphasizes that no conveyance instrument "shall be valid, except between the parties thereto, and such as have actual notice thereof, until the same shall be deposited with the register of deeds for record."

There is no Kansas case—and our research has revealed no case from any other jurisdiction—addressing the sufficiency of constructive notice of a restrictive covenant in a deed when the instrument lacks intended execution by the party to be bound by the covenant. However, we find some guidance on the general issue of constructive notice in *Luthi*, 223 Kan. at 629.

In that case, a deed assigning certain interests in oil and gas leases specifically described seven separate interests held by the assignor. The deed went on to grant " 'all interest . . . in all Oil and Gas Leases in Coffee County . . . owned' " by assignor to assignee through a "Mother Hubbard" clause. 223 Kan. at 623, 625. The assignor owned an interest in an eighth lease that she later transferred to a subsequent purchaser. He was promptly sued by the first assignee, who claimed ownership of the eighth lease. 223 Kan. at 622-25.

This court noted that the "Mother Hubbard" clause in the recorded first assignment was valid to transfer the interest in the eighth lease as between the assignor and the first assignee. The

issue, however, was whether the recording of the deed constituted constructive notice to the subsequent purchaser. 223 Kan. at 626. This court repeatedly emphasized the difference between a deed whose language provides adequate information to bind the parties to it and a deed whose recording provides adequate information to bind the parties' successors in interest though constructive notice. 223 Kan. at 625, 626, 629-30.

We stated:

"[A]n instrument which contains a 'Mother Hubbard' clause, describing the property conveyed in the general language involved here, is valid, enforceable, and effectively transfers the entire property interest as between the parties to the instrument. Such a transfer is not effective as to subsequent purchasers and mortgagees unless they have *actual* knowledge of the transfer." 223 Kan. at 629-30.

Because the deed "did not describe with sufficient specificity the property covered by the conveyance, [it] was not sufficient to impart constructive notice." 223 Kan. at 630.

The deed at issue here does not suffer from the same flaw as the deed at issue in *Luthi*. The restrictive covenant on commercial enterprises before us is worded clearly, as is the description of the real property conveyed. Yet the absence of the Dallingas' signatures is of paramount importance.

Under our statutory scheme, any constructive notice must of necessity be drawn from the recorded document itself or from other recorded documents it references. 223 Kan. at 629. Here, the form and language and signature lines of the deed demonstrated that its drafter intended it to be signed by *both* the Jordans and the Dallingas; the district court correctly pointed out that this made the document an indenture deed rather than a deed poll, although we are less concerned today with labels than with the legal significance of the Dallingas' failure to sign the deed before it was recorded.

The Dallingas' signatures were intended to signify and would have signified their acceptance of the covenant's burden or, viewed from the opposite but effectively indistinguishable perspective, their willingness to grant an equitable servitude on the property conveyed to them. Their failure to sign the deed left this acceptance or grant uncommunicated and the covenant ambiguous.

Where ambiguity exists, and construction is thus necessary, Kansas strictly construes such covenants against limitations on the free use of real property. See *Sporn v. Overholt*, 175 Kan. 197, 199, 262 P.2d 828 (1953).

In fact, the flaw in the recorded deed in this case is even more obvious than the flaw at the heart of the *Luthi* dispute. As acknowledged during oral argument to this court, this controversy between Jeremiah and the Seiferts could have been avoided if the register of deeds' office had refused to file a deed with unfilled signature lines. The lines could not be more "apparent," to use the word the legislature chose for K.S.A. 58-2221, even to an untrained eye.

Despite all of the energy invested in arguing other issues before the district court, the Court of Appeals panel, and us, the outcome of this case simply does not turn on whether the deed effectively conveyed title as between the parties to it, including whether it met all of the requirements for a valid warranty deed under K.S.A. 58-2003; whether the Dallingas were themselves subject to the restrictive covenant; or whether the statute of frauds was satisfied. Also, it does not turn on the 2002 release; we agree with Judge Greene that, as a matter of law, the Jordans could not release an interest they no longer held. See *Jeremiah*, 36 Kan. App. 2d at 28 (citing *Johnson v. Allen*, 178 Kan. 348, 352, 285 P.2d 764 [1955]; 23 Am. Jur. 2d, Deeds § 7).

The controlling issue in this case is whether there was constructive notice of the restrictive covenant on commercial enterprises. We hold that the absence of the Dallingas' signatures on the 1978 deed made it insufficient to provide the necessary constructive notice to subsequent purchaser Jeremiah. Notice was not merely key; it was indispensable. Persons who take real property without actual or constructive notice of restrictive covenants will not be bound by them.

The Court of Appeals is reversed; the district court is affirmed.

JOHNSON, J., not participating.

LOCKETT, J., Retired, assigned.