NOT DESIGNATED FOR PUBLICATION

No. 124,293

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

BRADLEY P. GOERING AND
SHARON K. GOERING,
*Appellants*,

v.

SAMUEL M. HUESTIS AND
LINDA F. HUESTIS,
*Appellees*.

MEMORANDUM OPINION

Appeal from Brown District Court; JOHN L. WEINGART, judge. Opinion filed April 29, 2022. Affirmed.

*William C. O'Keefe*, of O'Keefe Law Office, of Seneca, for appellants.

*Whitney L. Casement* and *Bradley R. Finkeldei*, of Stevens & Brand LLP, of Topeka, for appellees.

Before POWELL, P.J., GREEN, J., and RICHARD B. WALKER, S.J.

PER CURIAM: Despite the increasing complexity of modern real estate transactions and the plethora of laws designed to protect real estate buyers from having unfair advantage taken of them, the old Latin admonition "caveat emptor!" (let the buyer beware) still has vitality. This case presents a near-perfect example of why that ancient maxim retains currency today.

1

Samuel M. Huestis and Linda F. Huestis owned two adjacent pieces of property, with both parcels having residences located on them. The larger of those tracts was facing foreclosure, and Huestises recorded several covenants and restrictions on both parcels in the month before foreclosure was ordered by the district court. Bradley P. Goering and Sharon K. Goering purchased the foreclosed property from the bank with knowledge that restrictive covenants were in place. Goerings violated the restrictions, and Huestises sent a demand letter informing Goerings that they were required to stop violating the restrictions.

Goerings subsequently sued Huestises in an attempt to have the restrictions declared invalid and unenforceable. Huestises counterclaimed for an injunction to enforce the restrictions. The district court considered the parties' competing motions for summary judgment and denied Goerings' motion, granted Huestises' motion, and placed the requested injunction on Goerings. The district court denied Goerings' motion to alter or amend the judgment. In this appeal by Goerings, we find the district court's grant of summary judgment to Huestises to be proper, and therefore affirm its decision.

FACTS

In March 2007, Samuel M. Huestis and Linda F. Huestis purchased approximately 8.17 acres of land along Highway 36 in Brown County, Kansas. The property was divided into two tracts: one containing approximately 6.13 acres, and the other approximately 2.04 acres. Separate residences were located on each of the two separate tracts.

On July 1, 2014, US Bank National Association filed a petition for mortgage foreclosure against Huestises on the 6.13-acre tract only. In October 2015, while they were still the title owners and the month before the final order of foreclosure on the mortgage, Huestises filed a declaration of covenants, conditions, and restrictions with the

2

Brown County Register of Deeds covering both the 6.13- and 2.04-acre tracts. The declarations stated that the covenants and restrictions were put in place for the purpose of "enhancing and protecting the value, desirability, and attractiveness of the property and every part of it." Several restrictions were placed on both tracts, some of which included restrictions on fencing, signs, use of driveways, keeping of livestock, and maintenance of trees.

In November 2015, the Brown County District Court entered an agreed journal entry of mortgage foreclosure against Huestises for the 6.13-acre tract. The court ordered that the tract be sold at public auction. In October 2017, US National Bank conveyed the 6.13-acre tract to Goerings through a special warranty deed. The special warranty deed stated that the property was subject to "[a]ll easements, covenants, conditions and restrictions of record." Goerings later stated in an interrogatory answer that they "became aware of the Declaration the night of the closing." Goerings' title insurance specifically noted that the property was subject to the covenants and restrictions.

In May 2020, after receiving letters of complaint from Huestises about violations or the covenant restrictions, Goerings filed a petition seeking to have the covenants and restrictions declared invalid and unenforceable, the removal of the covenants and restrictions from the property title, an injunction against the Huestises prohibiting them from interfering with Goerings' use of the property, and costs. Huestises answered the petition and included a counterclaim seeking an injunction against the Goerings, prohibiting further violations of the covenant and restrictions.

Huestises moved for summary judgment and asked the district court to enter judgment in their favor on the initial petition and on their counterclaim. Goerings filed a competing motion for summary judgment.

At a hearing, the district court granted Huestises' motion for summary judgment and denied Goerings' motion for summary judgment in April 2021. The district court held that the restrictive covenants were valid and enforceable and that the Goerings violated the restrictions in several ways. The district court granted Huestises' request for an injunction from further violations of the restrictive covenants.

Goerings moved for a new trial or to alter or amend the judgment. The district court denied the motion in June 2021. In its decision, the district court noted that Goerings' motion for a new trial contained only arguments that could have been raised at the summary judgment stage, presented no new evidence, and failed to show that the district court clearly erred.

Goerings timely appeal from the district court's orders.

ANALYSIS

1. *The district court did not err in granting Huestises' motion for summary judgment and denying Goerings' motion for summary judgment.*

Before discussing the merits of the competing summary judgment motions, we briefly review the appropriate standards of review.

> "Summary judgment is appropriate when the pleadings, depositions, answers to interrogatories, admissions on file, and supporting affidavits show that no genuine issue exists as to any material fact and the moving party is entitled to judgment as a matter of law. The district court must resolve all facts and reasonable inferences drawn from the evidence in favor of the party against whom the ruling [is] sought. When opposing summary judgment, a party must produce evidence to establish a dispute as to a material fact. In order to preclude summary judgment, the facts subject to the dispute must be material to the conclusive issue in the case. Appellate courts apply the same rules and,

4

where they find reasonable minds could differ as to the conclusions drawn from the evidence, summary judgment is inappropriate. Appellate review of the legal effect of undisputed facts is de novo." *GFTLenexa, LLC v. City of Lenexa*, 310 Kan. 976, 981-82, 453 P.3d 304 (2019).

We review the district court's denial of a motion for summary judgment de novo, viewing the facts in the light most favorable to the party opposing summary judgment. "If 'reasonable minds could differ as to the conclusions drawn from the evidence'—in other words, if there is a genuine issue about a material fact—summary judgment should be denied.' [Citation omitted.]" *Siruta v. Siruta*, 301 Kan. 757, 766, 348 P.3d 549 (2015).

Although the parties do not specifically address the actual creation of restrictive covenants, we will briefly discuss pertinent law.

Generally, a covenant is an agreement to do or not do something, to act or refrain from acting in a certain way, or to do or refrain from doing certain things with respect to real property. 20 Am. Jur. 2d, Covenants § 1. Covenants are often created with the intention of enhancing or maintaining the value of property. They are created by promises concerning land and may be enforceable by or binding upon successors to real property. 20 Am. Jur. 2d, Covenants § 3.

A covenant which runs with the land, or in other words is binding on successors, is considered a real covenant. Real covenants relate to conveyed property and its occupation and enjoyment. In contrast, a personal covenant does not usually run with the land and is considered collateral or is not immediately concerned with property granted. 20 Am. Jur. 2d, Covenants § 19. Covenants that run with the land bind successors in title to the property, even if the covenant is not referenced in the subsequent owner's deed. 20 Am. Jur 2d, Covenants § 20. However, a lack of notice of a covenant can be grounds for declaring that the covenant is unenforceable. See 20 Am. Jur. 2d, Covenants § 45, n.1.

5

Generally, for a covenant to run with the land it must be shown that:

"(1) the covenanting parties intended to create such a covenant;
"(2) privity of estate exists between the person claiming the right to enforce the covenant and the person upon whom the burden of the covenant is to be imposed; and
"(3) the covenant 'touches and concerns' the land in question." 20 Am. Jur. 2d, Covenants § 21.

Kansas courts have noted that the general enforceability of restrictive covenants has its origin in common law and has long been recognized in Kansas. *Jeremiah 29:11, Inc. v. Seifert*, 284 Kan. 468, 472, 161 P.3d 750 (2007).

The Kansas Supreme Court has stated that for a covenant to run with the land:

"the grantor and grantee must intend that the covenant run with the land; the covenant must touch and concern the land; and there must be privity of estate between the original parties to the covenant, the original parties and the present litigants, or between the party claiming the benefit of the covenant and the party burdened." *Jeremiah 29:11*, 284 Kan. at 472.

Since the Huestises were the sole owners of both tracts of land at the time the restrictive covenants were created and placed of record, there is no question of privity which might theoretically impair the creation of these covenants.

Goerings do little to argue that the actual covenants and restrictions involved in this case were improperly created or do not run with the land. Instead, Goerings argue that the covenants and restrictions should not apply to them. Before the district court, Goerings' argument seemed to center around the contention that they did not have notice of the covenants and restrictions at the time they purchased the property; the covenants and restrictions were not part of the deed to the property; Kansas does not allow "spot

6

zoning;" the location of the property did not warrant the covenants and restrictions; and that Huestises took no action—other than sending demand letters—to enforce the restrictions.

But even within their own arguments to the district court, Goerings undercut their own theories for relief. For example, while arguing that they had no knowledge of the covenants, Goerings acknowledged that they were aware of the restrictions placed on the property but "believed that they would not have to pay any attention to those restrictions."

On appeal, Goerings have limited their arguments even further. In essence, they argue that the district court erred by granting Huestises' motion for summary judgment because the covenants were contrary to the public interest and the property had changed in such a way that the covenants serve no purpose.

Generally, Kansas recognizes three equitable defenses to the enforceability of restrictive covenants. First, "the right may be lost by laches, waiver, or acquiescence in the violation of such restrictions." *Persimmon Hill First Homes Ass'n v. Lonsdale*, 31 Kan. App. 2d 889, 892, 75 P.3d 278 (2003). Second, "enforceability may be denied when there has been a change in conditions so radical in nature as to neutralize the benefits of the restrictions and destroy their purpose." 31 Kan. App. 2d at 892. And third, "enforceability may be denied if [enforcement would be] contrary to the public interest." 31 Kan. App. 2d at 892. Goering does not raise the first equitable defense in his brief.

Goerings begin with the public interest prong and question whether courts "want to be involved in restrictions out in the county between two houses." But Goerings provide no citations supporting this inference that restrictive covenants in the country are unenforceable due to their location. And Kansas appellate cases discussing the public interest do not focus on judicial economy. Instead, the emphasis is on general public

welfare. See e.g. *Board of Reno County Comm's v. Asset Mgmt. & Marketing L.L.C.*, 28 Kan. App. 2d 501, 506-07, 18 P.3d 286 (2001) (considering whether restrictive covenant prohibiting construction of water tower was outweighed by the public's need of a water tower to remedy inadequate water system). To say the least, we are not persuaded by this argument from Goerings.

Goerings next argue that the conditions in the area have so radically changed that the benefit of the restrictions has been neutralized and destroyed. On appeal, they focus on their contention that the property was run down when they purchased it, so any restrictions were essentially irrelevant and should no longer be enforceable.

A panel of our court has held that:

"No hard and fast rule can be laid down as to when changed conditions have defeated the purpose of restrictions, and each case must be decided on the equities of the situation presented. A number of factors may be considered including, but not limited to, the purpose for which the restrictions were imposed, the location of the restriction violations, the type of violations which have occurred, and the unexpired term of the restrictions." *Holmquist v. D-V, Inc.*, 1 Kan. App. 2d 291, 296, 563 P.2d 1112 (1977).

In support of their argument, Goerings cite *Hecht v. Stephens*, 204 Kan. 559, 464 P.2d 258 (1970), where the Kansas Supreme Court held that the benefit of a restrictive covenant prohibiting trailer houses was neutralized due to changes in the neighborhood. In *Hecht*, the property in question had a restrictive covenant that prohibited trailer houses, businesses, and used cars. Stephens purchased a mobile home and moved it onto their property, the home was placed on a steel foundation, the wheels were removed, and steps and railings were constructed at the entrance. On appeal, because the neighborhood contained several prefabricated houses, mobile homes, businesses, and used cars, and because of the pervasive violations of the restrictive covenants and the substantial change of character in the neighborhood as a result of those violations, the Kansas Supreme

8

Court held that enforcement of the covenants and restrictions would be inequitable. 204 Kan. at 562-63, 565.

In this case, the covenants and restrictions were still focused on maintaining aspects of the property that, at least arguably, increased the value of the property. There is nothing in the record to suggest that the actual character of the rural neighborhood has so drastically changed that the restrictions are no longer providing a benefit. This is not a situation where everything around the property is a feedlot, so any benefit of prohibiting livestock operations is non-existent. Instead, this is a location with two country homes and what appears to be farmland around them. Maintaining trees, prohibiting livestock, and the other restrictions appear to have some tangible benefit to the properties and their value. Based on the record, we cannot conclude that the conditions of the property were so radically changed that the benefits of the restrictions placed on the property serve no purpose. See *Persimmon Hill First Homes Ass'n*, 31 Kan. App. 2d at 892.

Based on the arguments and record before us, we find that the district court did not err in granting summary judgment in favor of Huestises. Based on the pleadings before the district court, there was no genuine dispute of material fact that would preclude judgment in favor of Huestises. Huestises appears to have properly recorded permissible restrictions on the land which was later subject to foreclosure. Goerings had notice that the restrictions existed on the public record and still chose to purchase the property. And Goerings do not persuasively argue that equitable defenses against the restrictions absolve them of the responsibility of following the restrictions.

For their final argument about the inappropriateness of the restrictive covenants, Goerings question whether the "guest house" should control the larger home out in the country. However, Goerings do not make any real arguments supported by case law. Instead, this is simply a rephrasing of their general grievances with the restrictions. But the fact remains that the covenants and restrictions were in place at the time of their

9

purchase of the 6.13-acre tract , and Goerings knew about them and still purchased the property. By doing so, the Goerings agreed to the restrictions and assumed the risk of being sanctioned for violating them. Buyers' remorse is not enough to invalidate those restrictions after the fact.

2.  *The district court did not err by denying Goerings' motion alter or amend judgment or for a new trial.*

Goerings' second argument on appeal is essentially that the district court erred by denying their motion for new trial. Specifically, Goerings argue that their initial motion for summary judgment and response to Huestises' motion for summary judgment included a "clean hands" argument which the district court failed to address in its journal entry granting summary judgment or in denying the motion for new trial.

A district court has discretion to grant or deny a motion for new trial, or alter or amend the judgment, under K.S.A. 2020 Supp. 60-259(a), and an appellate court will not disturb the district court's ruling on a motion for new trial unless the district court abused its discretion. *City of Mission Hills v. Sexton*, 284 Kan. 414, 421, 160 P.3d 812 (2007).

Under K.S.A. 2020 Supp. 60-259(a), the district court is granted discretion to grant a new trial, or alter or amend the judgment, when:

> "(A) Abuse of discretion by the court, misconduct by the jury or an opposing party,
> accident or surprise that ordinary prudence could not have guarded against, or because
> the party was not afforded a reasonable opportunity to present its evidence and be heard
> on the merits of the case;
> "(B) erroneous rulings or instructions by the court;
> "(C) the verdict, report or decision was given under the influence of passion or prejudice;
> "(D) the verdict, report or decision is in whole or in part contrary to the evidence;

10

"(E) newly discovered evidence that is material for the moving party which it could not,

with reasonable diligence, have discovered and produced at the trial; or

"(F) the verdict, report or decision was procured by corruption of the party obtaining it,

and in this case, the new trial must be granted as a matter of right, and all costs incurred

up to the time of granting the new trial must be charged to the party obtaining the verdict,

report or decision."

Generally, motions to alter or amend the judgment seek to "'allow a trial court an opportunity to correct prior errors.'" *AkesoGenX Corp. v. Zavala*, 55 Kan. App. 2d 22, 37-38, 407 P.3d 246 (2017) (quoting *Antrim, Piper, Wenger, Inc. v. Lowe*, 37 Kan. App. 2d 932, 939, 159 P.3d 215 [2007]). Moreover, "it is proper for a district court to deny a motion to alter or amend if the movant could have—with reasonable diligence—presented the argument or evidence before the entry of the final order." *Ross-Williams v. Bennett*, 55 Kan. App. 2d 524, 564, 419 P.3d 608 (2018).

Goerings acknowledge that "there was no new evidence presented in the motion [for new trial or to alter or amend]." They instead argue that the district court failed to address one of the arguments made in the motion for summary judgment and then failed to recognize that it did not address that argument in the motion for new trial or to alter or amend. Specifically, Goerings argue that the district court did not address their contention that Huestises agreed to be done with the Goerings' property in the agreed judgment of mortgage foreclosure.

Goerings do not explain why this is relevant to the issue of whether the covenants and restrictions are enforceable. And it does not appear that it is relevant. The purpose of covenants and restrictions running with the land is to make those restrictions binding on subsequent owners of the property – even if the original party to put them in place no longer owns the land. Goerings cite no evidence for the proposition that when Huestises agreed the bank could foreclose the 6.13-acre tract they intended to invalidate the covenants and restrictions they had created just the month before. Additionally, they cite

11

no appellate cases holding that by Huestises agreeing the bank was entitled to foreclose its mortgage, the legal effect was to void the restrictive covenants.

Goerings also argue that they raised a "clean hands" issue before the district court which the district court failed to address. But when looking at the motions before the district court, there is no argument of this type made. Instead, it is merely a concluding sentence that states "[w]hen you try to correct people's actions you have to have 'clean hands.'" That sentence is not itself an argument but in reality is instead a summation of the various arguments Goerings made earlier in the motion – arguments which the district court addressed and found lacking.

Goerings tie this argument into the earlier argument that the district court did not consider that Huestises agreed to the judgment of mortgage foreclosure. But the district court was well aware of the fact that the property was foreclosed on.

After reviewing the record, we find that the district court adequately addressed the arguments made by Goerings in their motion for summary judgment and response for summary judgment. In their motion to for new trial or to alter or amend judgment Goerings could have, and in some respects did, raise the arguments made in the motion before the district court in the initial summary judgment motions. The district court found those arguments unpersuasive. We are likewise unpersuaded. The district court did not err by denying the motion for new trial or to alter or amend the judgment.

In sum, Huestises placed covenants and restrictions on the property while they were still the title owners of record and before the foreclosure action was final. Goerings have registered no complaint about Huestices' authority to do so or the legality of their creation.  If any interested party had a potential complaint against the restrictions, it was the foreclosing bank, which theoretically might have argued the covenants resulted in a slander of its prospective title ownership, since they were created and filed during the

time when its foreclosure litigation was still pending in court. But the bank is not a party to this litigation.

Simply put, Goerings have failed to show that those covenants and restrictions were invalid. Nor do they show that they do not run with the land. Goerings had both constructive notice of the covenants and restrictions through their filing with the Brown County Register of Deeds and actual notice through the title insurance provisions provided to them prior to closing. They decided to purchase the land anyway. Huestises attempted to enforce the restrictions. Ultimately the district court sided with Huestises and found the restrictions were valid and they were entitled to enforce them through an injunction. We find that the district court did not err in doing so, nor did the district court err by denying Goerings' motion to alter or amend the judgment or for new trial.

Affirmed.