NOT DESIGNATED FOR PUBLICATION

No. 125,927

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STEVEN J. ROBL and VERA J. ROBL,
*Appellees*,

v.

ELAINE I. CARSON,
*Appellant*.

MEMORANDUM OPINION

Appeal from Sedgwick District Court; ERIC A. COMMER, judge. Oral argument held March 5, 2024. Opinion filed May 17, 2024. Reversed and remanded with directions.

*T. Chet Compton*, of Fleeson, Gooing, Coulson & Kitch, L.L.C., of Wichita, for appellant.

*Kurt A. Harper* and *Braxton T. Moral*, of Depew, Gillen, Rathbun & McInteer, LC, of Wichita, for appellees.

Before GARDNER, P.J., MALONE, J., and TIMOTHY G. LAHEY, S.J.

PER CURIAM: Elaine Carson appeals the district court's summary judgment granting Steven J. Robl and Vera J. Robl the right to repurchase an undeveloped lot for Carson's failure to develop the property. The parties do not dispute the facts and instead focus on how to interpret a recorded instrument on the duty to build and the right to repurchase filed by the developer. Carson claims that the district court erred in granting summary judgment because the right to repurchase applies only to the developer and the provisions of the recorded instrument apply to neither the Robls nor to Carson. In the alternative, Carson claims that the Robls waived their right to enforce the repurchase

1

provision or that they are equitably estopped from doing so. The Robls argue that the right to repurchase is not exclusive to the developer and applies to subsequent owners.

Both parties assert that the language in the recorded instrument is unambiguous, yet they disagree on its meaning. We reach the opposite conclusion—the language in the recorded instrument is ambiguous and subject to more than one reasonable interpretation. Normally, a court might consider extrinsic or parol evidence to construe an ambiguous instrument, but neither party has offered any such evidence. When ambiguity exists in a real estate covenant, Kansas courts strictly construe them and all doubts and ambiguities are resolved in favor of the unrestricted use of real property. Applying this legal maxim, we find that Carson's interpretation of the recorded instrument is more reasonable than the Robls' interpretation. Thus, we reverse the district court's summary judgment for the Robls and remand with directions to grant judgment for Carson.

FACTUAL AND PROCEDURAL BACKGROUND

The parties do not dispute the facts. On March 29, 1991, Reflection Ridge, Inc. (the developer) filed a Declaration of Covenants, Conditions, and Restrictions of Reflection Ridge Sixth Addition (the Declaration). Reflection Ridge is an upscale residential development in northwest Wichita. On March 4, 1994, the developer filed an amendment to the Declaration titled "Notice of Building Restrictions and Right to Repurchase" (the Notice). The Notice states in its entirety:

"THE UNDERSIGNED, developer of that certain real property commonly described as 'Reflection Ridge' and located in Wichita, Sedgwick County, Kansas, does hereby declare that those certain building lots set out and described on Exhibit 'A' attached hereto and made a part thereof, are subject to, among other covenants, conditions and restrictions, the following:

"1.	Lot purchase Contracts for said lots contain, among other provisions, certain provisions regarding the owner's duty to build; the developer's right to repurchase; and requirement of the owner to utilize an approved builder, in substantially the following form:

"Duty to Build/Right to Repurchase. Buyer understands that the lot is included within the 'Builders' Program' of Reflection Ridge and understands and agrees that Buyer must, within eighteen (18) months of the date of closing, start construction of a residence on the lot with an approved Builder in the Reflection Ridge Builders' Program. Failure to start construction within said eighteen (18) month period shall entitle Seller to exercise the following option.

"Buyer hereby grants to Seller an option to repurchase the lot at any time during the five (5) year period following the expiration of eighteen (18) months from the date of closing for a repurchase price equal to one hundred percent (100%) of the purchase price shown herein; provided, that this option shall lapse and terminate if Buyer commences and diligently continues construction of a residence on the lot prior to the exercise of this option by Seller. It is agreed that the provisions of this paragraph, and the obligations of Buyer contained herein shall survive the closing and delivery of the deed provided for in this Contract and shall be binding upon Buyer's successors and assigns. Seller shall have the right to include this right to repurchase in the deed of conveyance.

"Buyer acknowledges that the Approved Builders in Reflections Ridge Development pay a Marketing Fee for homes they build in the Reflection Ridge development.

"2.	Regardless of the time a residence is constructed on any lot, the builder thereof must be an 'Approved Builder' in the 'Builders' Program' in Reflection Ridge and must have executed a written builder's agreement with the undersigned wherein such approval is granted which agreement shall contain, among other things, a provision

3

providing for the builder to pay a Marketing Fee to the undersigned for any home built in the Reflection Ridge development.

"3.    The foregoing shall apply to all of the lots described on Exhibit 'A' whether initially acquired from the undersigned or an individual owner of such lot and director, officer, employee or agent of the undersigned has any authority to waive or modify the foregoing requirements.

"4.    The foregoing shall be deemed covenants running with the land and shall be binding on the initial purchasers of any lot, their heirs, personal representatives, successors and assigns."

On February 23, 1995, the developer conveyed Lot 30 to Dennis D. Smith and Jenell M. Smith. The parties agree that Lot 30 is included in the real estate covered by the Notice. The developer dissolved as an entity in 1997. The Smiths did not build a house on the lot. They transferred the lot by quitclaim deed, recorded on December 15, 2008, to the Jenell M. Smith Living Trust. The living trust transferred the lot to Cypress Point, LLC through a trustee deed recorded on October 3, 2019. Later that month, on October 23, 2019, a warranty deed was recorded transferring the lot to Steven J. Robl.

In November 2019, the Robls executed a contract selling Lot 30 to Carson. The contract did not explicitly refer to the Notice and included no language about a duty to build or a right to repurchase. Under paragraph 19 on Title Evidence, the contract stated that the sellers were conveying the lot to the buyer subject to "restrictions and protective covenants of record." The statutory warranty deed conveying the lot from the Robls to Carson stated that the deed was subject to "easements and restrictions of record, if any."

Carson did not develop the lot within 18 months of closing. Lot 30 is now the only vacant lot in the development. The Robls timely notified Carson that they intended to exercise their right to repurchase the lot for the original purchase price, but Carson

4

claimed that the Robls had no such right. The Robls petitioned the district court to enforce the right to repurchase the lot under the Notice.

Based on these undisputed facts, the parties filed competing motions for summary judgment on whether the Notice granted the Robls a right to repurchase that was enforceable against Carson. After hearing arguments of counsel, the district court ruled from the bench granting the Robls' motion and denying Carson's, finding that the Notice granted the Robls an enforceable right to repurchase the lot from Carson. The district court found that although the Notice referenced the developer's right to repurchase, it also indicated that the buyer granted that right to the seller. Because seller was a broad term that naturally encompassed the developer along with other sellers, the district court found that the Notice unambiguously applied to all sellers. The district court also found that the Notice ran with the land and applied to all successors of the initial purchaser, which included Carson. The district court later filed a written journal entry incorporating its ruling from the bench. Carson timely appealed the district court's judgment.

On appeal, Carson claims the district court erred in granting the Robls' motion for summary judgment and instead should have granted her motion. Carson argues that the right to repurchase under the Notice belongs solely to the developer and the duty to build is not binding on Carson. Alternatively, she argues that the Robls waived their right to enforce the repurchase provision by not referring to it in the contract selling the lot to Carson. She also argues that the Robls are equitably estopped from enforcing the Notice.

The Robls argue that the right to repurchase is not exclusive to the developer and applies to subsequent owners. They assert that a covenant running with the land will bind all subsequent owners to the restrictions in the covenant, such as the duty to build within 18 months of closing. The Robls contend that they asserted their right to repurchase within the required time, defeating any claim of waiver. They also argue that the

5

character and circumstances of Reflection Ridge have not drastically changed, defeating Carson's claim that the Robls are equitably estopped from enforcing the Notice.

> "Summary judgment is appropriate when the pleadings, depositions, answers to interrogatories, admissions on file, and supporting affidavits show that no genuine issue exists as to any material fact and the moving party is entitled to judgment as a matter of law. The district court must resolve all facts and reasonable inferences drawn from the evidence in favor of the party against whom the ruling is sought. When opposing summary judgment, a party must produce evidence to establish a dispute as to a material fact. In order to preclude summary judgment, the facts subject to the dispute must be material to the conclusive issue in the case. Appellate courts apply the same rules and, where they find reasonable minds could differ as to the conclusions drawn from the evidence, summary judgment is inappropriate. Appellate review of the legal effect of undisputed facts de novo. [Citation omitted.]" *GFTLenexa, LLC v. City of Lenexa*, 310 Kan. 976, 981-82, 453 P.3d 304 (2019).

The parties do not dispute any of the material facts and focus only on the legal effect of the Notice. This court exercises unlimited review over the interpretation and legal effect of written instruments, including whether a written instrument is ambiguous, and is not bound by the lower court's interpretations or rulings. *Trear v. Chamberlain*, 308 Kan. 932, 936, 425 P.3d 297 (2018). The enforceability of a restrictive covenant in a written deed is a question of law subject to de novo review. *Jeremiah 29:11, Inc. v. Seifert*, 284 Kan. 468, 472, 161 P.3d 750 (2007).

"'The primary rule for interpreting written contracts is to ascertain the parties' intent. If the terms of the contract are clear, the intent of the parties is to be determined from the language of the contract without applying rules of construction.'" *Russell v. Treanor Investments*, 311 Kan. 675, 680, 466 P.3d 481 (2020). But if "'the court determines that a written contract's language is ambiguous, extrinsic or parol evidence may be considered to construe it.'" 311 Kan. at 680. Additionally, "'[a]n interpretation of a contractual provision should not be reached merely by isolating one particular sentence

6

or provision, but by construing and considering the entire instrument from its four corners.'" *Chamberlain*, 308 Kan. at 936.

## DOES THE NOTICE GRANT THE ROBLS A RIGHT TO REPURCHASE THE LOT?

Carson claims that the district court erred in granting summary judgment because the right to repurchase applies only to the developer and the provisions of the Notice apply to neither the Robls nor to Carson. Paragraph 1 of the Notice states that lot purchase contracts contain, among other provisions, a provision regarding "the developer's right to repurchase." Carson argues that the exclusive reference to the developer means that only the developer has the right to repurchase. The Robls counter that Carson's interpretation ignores the rule that the instrument should be construed in harmony in its entirety and not in isolation. To support that argument, the Robls point to the form contractual provision in paragraph 1 stating that the "Buyer" grants to the "Seller" the right to repurchase the property.

Carson emphasizes how the Notice is structured. We quote the crux of Carson's argument:

"As pertinent here, the Notice includes two parts:  (1) the numbered paragraphs, and (2) a form contract provision within numbered paragraph 1. These two parts of the Notice use different language. The numbered paragraphs never use the term 'Seller' or 'Buyer.' Those terms are only used within the form contract provision so that the provision can be seamlessly inserted into a lot purchase contract. The form contract provision never uses the term 'developer' but, when describing the right to repurchase embodied in the form contract provision, paragraph 1 defines it as 'the developer's right to repurchase.' Nowhere outside the form contract provision itself is the duty to build connected with a 'Buyer' or the right to repurchase connected to a 'Seller.'

"Why is this significant? Because the numbered paragraphs are the covenants, conditions and restrictions that become effective by the execution and recording of the Notice itself. The form contractual provision within paragraph 1, however, is only

7

effective when it is included within contracts for the sale and purchase of lots in substantially the same form. That, of course, did not happen here."

According to Carson, only "the numbered paragraphs are the covenants, conditions and restrictions that become effective by the execution and recording of the Notice." Carson emphasizes that paragraph 1 describes "'the developer's right to repurchase.'" Carson maintains that the indented language in paragraph 1 is merely a "form contractual provision" that can be inserted into lot purchase contracts to extend the developer's right to repurchase to subsequent sellers of any lot. But since the form contractual provision was not included in the lot purchase contract between Carson and the Robls, Carson asserts that the language in the Notice is not effective for her.

As is often the case in disputes about the meaning of a written document, both parties assert that the language in the Notice is clear and unambiguous, yet they arrive at entirely different conclusions about the document's meaning. In our unlimited review, the first matter to consider anew is whether the language in the Notice is ambiguous. This is perhaps the most important consideration because when ambiguity exists in a real estate covenant, Kansas courts strictly construe them and all doubts and ambiguities are resolved in favor of the unrestricted use of real property. *Jeremiah 29:11*, 284 Kan. at 475. Thus, if ambiguous, we construe the Notice in a manner that favors Carson.

Whether the Notice is ambiguous is a question of law, and we are not bound by the parties' characterization of the Notice as unambiguous. *Waste Connections of Kansas, Inc. v. Ritchie Corp.*, 296 Kan. 943, 965, 298 P.3d 250 (2013). To be ambiguous, "'a contract must contain provisions or language of doubtful or conflicting meaning, as gleaned from the natural and reasonable interpretation of its language.'" *Steinle v. Knowles*, 265 Kan. 545, 551, 961 P.2d 1228 (1998). "'The language in a contract is ambiguous when the words used to express the meaning and intention of the parties are

8

insufficient in a sense the contract may be understood to reach two or more possible meanings.' [Citation omitted.]" *State v. Braun*, 312 Kan. 3, 9, 470 P.3d 1286 (2020).

The Notice does not directly state its intended purpose, but that purpose seems self-evident—to require that contracts for the purchase of lots contain three individually identified but related provisions: (1) the owner's duty to build; (2) the developer's right to repurchase; and (3) the owner's obligation to use an approved builder who has a signed marketing agreement with the developer. All three provisions specifically relate to the developer and adhere to the express intent of the Declaration "to insure the proper development [of the Reflection Ridge Sixth Addition] . . . and the rights of property owners and residents therein." The provisions must be read in conjunction with one another rather than as separate individual covenants. *Chamberlain*, 308 Kan. at 936.

The parties agree that the Notice requires that contracts for the purchase of a lot contain provisions which allow for an option to repurchase a lot when an "owner" fails to begin construction within 18 months of purchase with an approved builder who has a signed agreement to pay a marketing fee to the developer. The ambiguity arises over whether the option to repurchase belongs solely to the developer or applies to any seller. The language itself is not ambiguous, it is how the Notice is constructed which creates the ambiguity. After identifying the right to repurchase as the "developer's right to repurchase," the Notice directs that the contract contain the right to repurchase provision "in *substantially* the following form." (Emphasis added.) The "form" is then set forth in the Notice. But the suggested form does not use the terms "developer" and "owner" as initially used in the Notice. Rather, it uses the broader terms "Seller" and "Buyer"—terms typically used in real estate sales contracts. The language in the form states: "Buyer hereby grants to Seller an option to repurchase the lot."

Based on that language, the Robls claim they are beneficiaries of the option to repurchase because the form option language unambiguously applies to them as sellers.

9

Carson argues that because the Notice expressly designates the right to be protected as the "developer's right to repurchase," it unambiguously means just that; because the Robls are not the developer, they have no right to repurchase. Both interpretations are plausible readings of the language used. As a result, the Notice is ambiguous.

Normally, a court might consider extrinsic or parol evidence to construe an ambiguous instrument. *Russell*, 311 Kan. at 680. For instance, trying to discover the testimony of Marvin Schellenberg who filed the Notice of record on the developer's behalf in 1994 would have been an excellent place to begin to determine the intent and meaning of the Notice. But neither party offered any such evidence in district court. We must construe the Notice based on the record provided for our review, but all doubts and ambiguities are resolved in favor of the unrestricted use of real property. *Jeremiah 29:11*, 284 Kan. at 475. Applying this legal maxim, we find that Carson's interpretation of the Notice is more reasonable than the Robls' interpretation of the instrument.

The real estate purchase contract between the Robls and Carson did not include the form contract provisions set forth in the Notice, nor any provision in substantially the same form. The contract makes no mention of a duty to build or a right to repurchase. Thus, while nominally a contract claim, the Robls claim is actually an action to enforce the 1994 Notice, which is an amendment to the Declaration for the Reflection Ridge Sixth Addition adopted in 1991. In their analysis of the recorded instrument, the Robls fail to explain the specific designation of the "developer's right to repurchase" in the Notice. It is a basic principle that a court should not interpret a contract in a manner which renders a term of the contract meaningless. *Guss v. Fort Hays State University*, 38 Kan. App. 2d 912, Syl. ¶ 8, 173 P.3d 1159 (2008). If *every* seller of a lot has a right to repurchase an undeveloped lot after 18 months, there is no apparent reason why the Notice would refer specifically to "the developer's right to repurchase."

Considering the language of the Notice as a whole, the option to repurchase is reasonably understood to be part of an effort by the developer to control the speed and quality of the development, along with its stream of revenue. This is accomplished by way of an integrated requirement for timely development with approved builders who pay a marketing fee to the developer. The developer's likely intent in filing the Notice of record and using the term "developer's right to repurchase" was to ensure that it could maintain its control over speed, quality, and revenue even when a lot first sold by the developer was later resold to a new owner. The Notice was intended to alert owners that the *developer* retained a right to repurchase any lot which was not timely developed.

The sales contract here is silent about the duty to timely build and any option to repurchase, but the contract states it is "subject to easements and restrictions of record." From this language, the Robls argue that the right to repurchase is automatically a part of the contract. But this conclusion conflicts with the plain language of the Notice, which does not specify that any mandatory wording be included in the contract. Rather, it requires only that the provisions about the owner's duty to build, the developer's right to repurchase, and the owner's obligation to use an approved builder with a marketing agreement with the developer, be included in the contract "in substantially the following form." The Notice assumes that the actual provisions which the Notice requires will be placed in the lot purchase contract; otherwise there is no purpose for including the language that the provision be *substantially* in the form provided in the Notice.

Other considerations support Carson's interpretation. First, it makes little sense that the developer, who has a vested interest in the success of its housing development, would outsource enforcement of the timely building requirement along with its right to repurchase and leave its concurrent ability to obtain marketing fees dependent on any lot owner who might choose to sell their lot. An individual lot "Seller" has no vested interest in the proper development of the neighborhood or the rights of its owners and residents,

11

having sold their lot to a new owner. Likewise, an individual lot "Seller" receives no marketing fee from approved builders under a marketing agreement with the developer.

Second, the original 1991 Declaration is part of the record here, and the entities and persons with the right to enforce the covenants is stated in Article 7. Enforcement responsibilities for "all restrictions, conditions, covenants, reservations, liens, and charges now or hereafter imposed by the provisions of this Declaration" is limited to "[t]he association, Declarant [Reflection Ridge, Inc.], or any Owner." Nothing in the summary judgment pleadings suggests that the Robls fall into any of these categories. Parties authorized to enforce covenants do not include former lot owners, such as the Robls, and nothing in the contract or the Notice changes the enforcement mechanism for any covenant, including the one here. This is not to say that the Robls lack standing to bring their breach of contract action. But reading the Notice *in pari materia* with the enforcement provision in the Declaration supports Carson's interpretation of the Notice, and it is a clear indicator that the developer intended the right to repurchase to be exactly as expressed in the Notice: "the developer's right to repurchase."

The Robls point to paragraph 3 of the Notice, which states: "'The foregoing shall apply to all of the lots described on Exhibit 'A' whether initially acquired from the [developer] or an individual owner of such lot . . . .'" Paragraph 4 of the Notice states: "The foregoing shall be deemed covenants running with the land and shall be binding on the initial purchasers of any lot, their heirs, personal representatives, successors and assigns." But the language in these two paragraphs is not inconsistent with Carson's interpretation of the Notice. As we stated, the developer's likely intent in filing the Notice of record and using the term "developer's right to repurchase" was to ensure that it could control the proper development of the neighborhood, including the marketing fee arrangement with approved builders, even when a lot first sold by the developer was later resold to a new owner. The Notice was intended to publicly alert any potential owner that the developer retained a right to repurchase any lot which was not timely developed. In

12

this way, the restrictions in the Notice are "covenants running with the land" binding on the initial purchasers of any lot and their successors and assigns.

In sum, because we find that the Notice is ambiguous, we strictly construe the repurchase provision and all doubts and ambiguities are resolved in favor of the unrestricted use of real property. See *Jeremiah 29:11*, 284 Kan. at 475. This does not mean that Carson automatically wins this case. But applying this strict construction, we find that Carson's interpretation of the Notice is more reasonable than the Robls' interpretation of the instrument. The right to repurchase applies only to the developer, and the provisions of the Notice apply neither to the Robls nor to Carson.

As a final note, even if the Notice unambiguously allowed the Robls to repurchase the lot, Carson persuasively argues that they are equitably estopped from doing so. The enforceability of restrictive covenants may be denied on equitably grounds when "there has been a change in conditions so radical in nature as to neutralize the benefits of the restrictions and destroy their purpose." *Persimmon Hill First Homes Ass'n v. Lonsdale*, 31 Kan. App. 2d 889, 892, 75 P.3d 278 (2003). In other words, "covenants concerning the use of real estate will be enforced by equity only so long as they remain reasonable in light of their purpose, taking into account changes in relevant conditions since the time they were made." *South Shore Homes Ass'n v. Holland Holiday's*, 219 Kan. 744, 753, 549 P.2d 1035 (1976).

All the contract provisions referenced in the Notice are inextricably linked to the defunct developer. And the contract provisions in the Notice are interrelated—the owner's obligation to build requires using an approved builder who has a signed marketing agreement with the developer. Carson signed a contract to buy her lot in 2019, more than 20 years after the developer ceased to exist. Carson could not comply with the building restriction as written because the developer no longer exists to approve any builder. Enforcement of the long-abandoned restriction would result in a total forfeiture

13

of Carson's interest in the real estate, including any possible increase in its value during the time of her ownership. Under these circumstances, the Robls are equitably estopped from forcing Carson to sell the lot back to them.

The Robls could have included a repurchase provision in their lot purchase contract with Carson. Had the Robls established a contractual right to repurchase, neither the lack of enforcement power under the Declaration nor equitable estoppel would have prevented enforcement of that right. Without an express agreement in their contract, the Robls cannot rely on the Notice, with its ambiguous provisions, to provide them with a right to repurchase the lot. For all these reasons, we reverse the district court's summary judgment for the Robls and remand with directions to grant judgment for Carson.

Reversed and remanded with directions.